Jacquelyn M. QUINT, Plaintiff

v.

A.E. STALEY MANUFACTURING COMPANY, Defendant

No. 96–CV–71.

United States District Court, D. Maine.

Jan. 9, 2003.

As Amended Jan. 15, 2003.

Jeffrey Neil Young, Esq., McTeague, Higbee, Macadam, Case, Watson & Cohen, Topsham, ME, for Plaintiff.

Jacquelyn M. Quint, New Limerick, ME, Pro se.

John W. McCarthy, Esq., Brent A. Singer, Esq., Rudman & Winchell, Bangor, ME, for Defendant.

Arthur J. Greif, Esq., Christopher L. Dalton, Esq., Gilbert & Greif, P.A., Bangor, ME, Stephen A. Roach, Esq., Roach & Wise, Boston, MA, David G. Webbert, Esq., Johnson & Webbert, LLP, Augusta, ME, for Movants.

## ORDER REGARDING ATTORNEY FEES

SINGAL, Chief Judge.

Before the Court are various motions regarding enforcement of Plaintiff's fee arrangements with former counsel (Docket # 286, 289, 299) and requests for statutory fees pursuant to the fee-shifting provision of the Americans with Disabilities Act (Docket # 161, 221, 224, 229, 231).[1] *See* 42

---

1. Plaintiff may also request attorney fees pur- suant to the fee-shifting provisions of the

U.S.C. § 12205 (1995). On November 21, 2002, the Court heard oral arguments on these motions with all relevant parties present. The Court now proceeds to rule on all matters still pending in this action.[2]

## I. BACKGROUND

Plaintiff Jacquelyn Scott (f/k/a Jacquelyn Quint) originally brought eleven counts against her former employer, Defendant A.E. Staley Manufacturing Company: Counts I and II sought relief for sexual discrimination and harassment under the Maine Human Rights Act (MHRA) and Title VII of the Civil Rights Act; Counts III and IV were retaliation claims pursuant to Title VII and the MHRA; Count V asserted a claim under the Americans with Disabilities Act (ADA); Count VI sought damages under the MHRA for discrimination against Plaintiff on the basis of her disability; Counts VII through X alleged Negligence, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress and Defamation; and, Count XI sought relief pursuant to the Family and Medical Leave Act (FMLA). The Court granted summary judgment on all counts except V, VI and XI. On the remaining disability and FMLA claims, the jury awarded Plaintiff $720,000 in punitive and compensatory damages. The Court reduced that award to $300,000 pursuant to a statutory damages cap. At a subsequent equitable remedies hearing, Plaintiff

was awarded a further $8,019 in back pay, but was denied reinstatement and front pay.

Defendant appealed and Plaintiff cross-appealed. The First Circuit increased her back pay award to $45,917 and remanded to the District Court for further consideration on the questions of reinstatement and front pay. While on remand, the Court found that the parties had entered a binding settlement agreement during negotiations on August 9, 1999. On January 21, 2001, the Court enforced settlement in the amount of $485,000. That figure included the original $300,000 award, the back pay award, as well as an additional $100,000 to settle Plaintiff's outstanding reinstatement and front pay claims. The Court of Appeals affirmed the imposition of settlement on April 11, 2001. More than one year later, on April 22, 2002, the Supreme Court denied Plaintiff certiorari.

Plaintiff has retained and terminated a number of attorneys over the course of the litigation. Four attorneys are relevant to the current proceeding. Plaintiff first retained David G. Webbert of the law firm Johnson & Webbert (collectively "Webbert"), located in Augusta, Maine, as trial counsel. Plaintiff then terminated Webbert and hired Steven Roach of the Boston firm Roach & Wise (collectively "Roach") for her first appeal. Roach also represented her on the subsequent remand, employing Webbert as local counsel. Plaintiff

---

Family and Medical Leave Act, 29 U.S.C. § 2617(a)(3) (1998), and the Maine Human Rights Act, 5 M.R.S.A. § 4614 (2002), as a prevailing party at trial. However, the operative language under all three provisions is substantially the same and Plaintiff is entitled to only one award. *See, e.g., Martino v. Mass. Bay Transp. Auth.,* 230 F.Supp.2d 195, 198 (D.Mass.2002) (addressing an award pursuant to Title VII and a state anti-discrimination statute). Thus, the Court limits its discussion to the Americans with Disabilities Act provision.

2. Also pending are Plaintiff's request for a partial release of settlement funds held in escrow (Docket # 312) and Defendant's motion for release of funds regarding the Bill of Costs (Docket # 315). As Plaintiff's request becomes moot in light of the Court's present order, the Court does not address the request other than to dismiss it. Defendant's request for a partial release of funds and notice of an "equitable lien" in the amount of the Bill of Costs is also denied.

objected to the imposition of settlement and terminated Roach after the August 9, 1999 negotiations that lead to the settlement agreement. Plaintiff's counsel in opposing settlement was A.J. Greif of the Bangor, Maine, firm Gilbert & Greif (collectively "Greif"). Greif was terminated after failing to prevent the imposition of settlement. Plaintiff has retained current counsel, Jeffrey Neil Young of the Topsham, Maine, firm McTeague, Higbee, Case, Cohen, Whitney & Toker (collectively "Young"), for the limited purpose of effectuating settlement. Plaintiff presently proceeds pro se on all other issues before the Court.

## II. DISCUSSION

After various partial distributions to Plaintiff, $384,656.14 of the settlement, including $52,656.14 in interest, remains in escrow. Attorneys Webbert, Roach and Greif seek to intervene and enforce liens upon the settlement pursuant to fee agreements with Plaintiff. In response, Plaintiff demands a jury trial regarding the enforceability of the fee arrangements. Plaintiff also asks the Court to release an hourly fee to Attorney Young directly from the settlement proceeds. Additionally, Defendant seeks a statutory fee award from Plaintiff for pursuit of a frivolous appeal. Finally, Webbert, Roach and Young seek attorney fees from Defendant A.E. Staley Manufacturing pursuant to the ADA fee-shifting statute. *See* 42 U.S.C. § 12205. The Court first addresses the fee arrangements and then considers the requests for statutory fees.

### A. Fee Arrangements

Plaintiff contests the reasonableness of fee arrangements with three former counsel. She further maintains that she enjoys a right to a jury trial regarding the reasonableness issue.[3] The three attorneys all filed motions to intervene as of right pursuant to Rule 24(a)(2) to enforce attorney's liens on Plaintiff's settlement. *See* Fed.R.Civ.P. 24(a)(2). All have filed notices of their respective liens with this Court as well. (Docket # 138, 197, 182.) Because Plaintiff waived all objections to intervention at the hearing, the Court moves on to consider the reasonableness of the three arrangements directly.

▮ District courts may exercise supplemental jurisdiction over collateral fee disputes that would otherwise represent state law contract claims. *Kalyawongsa v. Moffett,* 105 F.3d 283, 288 (6th Cir.1997) (requiring courts to exercise jurisdiction due to concerns of judicial economy and professional responsibility). Exercise of supplemental jurisdiction over fee disputes also entails the authority to determine the amount of an attorney's lien brought under state law and incorporate that amount in a fee award. *Id.* Courts also have broad supervisory power to refuse to enforce unreasonable fee agreements. *See Ryan v. Butera, Beausang, Cohen & Brennan,* 193 F.3d 210, 214 (3d Cir.1999); *Alderman v. Pan Am World Airways,* 169 F.3d 99, 102 (2d Cir.1999); *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.,* 778 F.2d 890, 896 (1st Cir.1985). This supervisory authority is derived from a court's equity powers. *See Krause v. Rhodes,* 640 F.2d 214, 218 (6th Cir.1981).

---

**3.** Plaintiff also argues that former counsel is not entitled to prejudgment interest, citing *Green v. Nevers,* 196 F.3d 627 (6th Cir.1999). However, *Green* is inapposite in the present case because the *Green* Court found former counsel's fee arrangement invalid before denying interest on an equitable request for quantum meruit. *Green,* 196 F.3d at 633. As discussed below, the Court finds all of the fee arrangements to be reasonable and valid in the present case.

██ Under the Seventh Amendment a party enjoys a limited right to a jury trial in civil matters. This right only attaches to legal actions recognized at common law at the time of the Amendment's adoption in 1791. *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). While contract disputes concerning the terms of a contingency agreement represent a legal dispute triable to a jury at common law, post-adjudication reasonableness determinations sound in equity and lie beyond the scope of the Seventh Amendment. *See McGuire v. Russell Miller, Inc.,* 1 F.3d 1306, 1314–15 (2d Cir.1993); *see also Resolution Trust Corp. v. Marshall,* 939 F.2d 274, 279 (5th Cir.1991) (per curiam) (holding that there was no legal right to recover attorney fees at common law under); *Cont'l Bank N.A. v. Everett,* 861 F.Supp. 642, 644 (N.D.Ill.1994) (same). Because Plaintiff's reasonableness objections to the fee arrangements in this matter sound primarily in equity, she has no right to a jury trial regarding the enforceability of those arrangements.[4] In light of the above discussion, the Court orally denied Plaintiff's motion for a jury trial on the fee dispute (Docket # 266) at the November 21, 2002 hearing.

As Plaintiff objects to the professional conduct of her former counsel, the local rules require the Court to apply the Maine Code of Professional Responsibility and the Maine Bar Rules to the fee arrangements. *See* D. Me. Local R. 83.3(d); *Holbrook v. Andersen Corp.,* 756 F.Supp. 34, 38 n. 7 (D.Me.1991). Rule 3.3(a) of the Maine Code of Professional Responsibility prohibits fees in excess of a reasonable fee as understood by a "lawyer of ordinary prudence." Me. Bar R. 3.3(a). Whether a fee is excessive is determined by examining a number of factors, including: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the responsibility assumed, the amount involved, and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation and ability of the lawyer performing the services; (8) whether the fee is fixed or contingent; and (9) the informed written consent of the client as to the fee agreement. *Id.* In light of the above factors, the Court considers the reasonableness of the three arrangements in turn.

1. Fee Agreement with Attorney A.J. Greif

██ Greif seeks to enforce a lien in the amount of $17,736.05 against Plaintiff's settlement. The agreement at issue is a mixed hourly-contingent fee arrangement. Because Greif was unsuccessful in achieving the contingent portion of his fee arrangement, he seeks reimbursement solely for time expended at a rate of $150 an hour and for expenses incurred between August 24, 1999 and January 3, 2000.

---

**4.** Plaintiff also demands a jury trial regarding Attorneys Webbert and Roach's request for statutory fees in addition to a contingent fee. The fee-shifting statute, however, reserves to the Court discretion to award reasonable attorney fees to the prevailing party. 42 U.S.C. § 12205 (1995). The reasonableness of a contingent fee is simply one factor to consider in making the statutory fee determination. *See Blanchard v. Bergeron,* 489 U.S. 87, 93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); *Sargeant v. Sharp,* 579 F.2d 645, 649 (1st Cir. 1978).

Greif billed approximately 120 hours over the span of roughly 5 months or approximately 6 hours a week. During that period Greif prepared for and argued a motion to request reinstatement and contested a motion to enforce settlement. Given the intensive course of litigation during that brief period and the significant responsibility assumed by Greif in opposing settlement, Greif's fee of $17,736.05 is reasonable. *See Schindler v. Nilsen,* 770 A.2d 638, 642 (Me.2001) (finding a fee of $15,132 for 126.10 hours worked not unreasonable as a matter of law). The Court therefore enforces Greif's lien and orders that the law firm of Gilbert & Greif be paid $17,736.05 from the remaining settlement amount.

■ Plaintiff also challenges Greif's professional conduct more generally. She alleges that he did not respond to client wishes regarding a December 10, 1999 hearing on the settlement. She maintains that he failed to request a continuance, depose certain witnesses, call certain witnesses and request that the trial Judge recuse himself. Plaintiff further maintains that Greif failed to adequately prepare for the hearing. Because the Court has adopted the Maine Code of Professional Responsibility, it may enforce Maine disciplinary rules. *See* D. Me. Local R. 83.3(d); *United States v. Klubock,* 832 F.2d 664, 667 (1st Cir.1987) (en banc) (holding that district courts may adopt and enforce state ethical rules). However, Greif's actions do not rise to a violation of professional conduct. Determinations of litigation strategy, such as calling witnesses and scheduling matters, rest firmly in the hands of counsel. *See, e.g., State v. Brewer,* 699 A.2d 1139, 1146 (Me.1997) (addressing attorney discretion in context of ineffective assistance of counsel claim). The Court also notes that Greif spent 5.10 hours preparing for and attending the settlement

hearing on December 10 and 3.5 hours researching and preparing motions for recusal. Thus, the Court finds that Attorney Greif's behavior comported with the Code of Professional Responsibility.

2. Fee Arrangement with Attorney David G. Webbert

■ Webbert seeks to enforce a lien upon Plaintiff's settlement pursuant to a contingent fee agreed to by Plaintiff. The fee agreement provides Webbert 25% of the gross amount collected upon entry of a trial court judgment or settlement of any of Plaintiff's claims and also assigns Plaintiff's right to request statutory fees. Webbert seeks $121,250 for his contingent fee as well as $19,543.90 in costs, totaling $140,793.90. The Court limits its present discussion to the reasonableness of the agreement.

Plaintiff argues that Attorney Webbert pressured her into signing the fee agreement without affording her ample time to review the document and make an informed decision. She further maintains that the assignment of statutory fees in addition to the 25% contingency fee is unreasonable. Webbert responds that the two compromised, agreeing on the contingent fee coupled with the assignment of statutory fees due to the difficulties of Plaintiff's case and her objections to a higher contingent fee.

Plaintiff was not pressured into the agreement. She testified at the hearing that although she had second thoughts regarding the contingent fee agreement, she was unable to find another attorney to take the case. Indeed, before agreeing to the Webbert arrangement, Plaintiff shopped the proposed contingent fee around among other attorneys. The Court finds that Plaintiff knowingly entered into the arrangement without undue pressure from Webbert.

As regards the 25% fee coupled with the assignment of statutory fees, the arrangement is reasonable in light of Webbert's extensive civil rights litigation experience, the complexity of Plaintiff's case and his success at trial. *See Holbrook,* 756 F.Supp. at 40. Consequently, Webbert is entitled to $140,793.90 in costs and fees under the agreement as well as a $15,285.90 pro rata share of the settlement interest accrued to date.[5] The Court orders payment to Webbert in the above amount from the settlement proceeds.

3. Fee Arrangement with Attorney Stephen A. Roach

██ Attorney Roach and the law firm of Roach & Wise seek to enforce a lien upon Plaintiff's settlement in the amount of $72,750 pursuant to a contingent fee agreement. The agreement provided for a 15% contingent fee upon any settlement, judgment or other disposition of the matter in favor of Plaintiff. The agreement further provided that Roach would pursue cross-appeals regarding Plaintiff's right to reinstatement, her failure to mitigate damages, the trial court's back pay determination and dismissal of Plaintiff's sex discrimination claims. Additionally, Plaintiff assigned her right to request a statutory fee award.

Plaintiff maintains that the fee agreement is unreasonable because obtaining a favorable appellate disposition on the heels of an already favorable jury verdict does not represent a contingency. Additionally, Plaintiff again argues that recovery of both a contingent fee and statutory fee represents an unreasonable double recovery. Roach counters that Plaintiff's verdict was vulnerable on appeal and the possibility of being overturned was a very realistic one. Moreover, he maintains that he urged Plaintiff to continue with Attorney Webbert because hiring new appellate counsel would decrease her net recovery. Ultimately, he argues that they agreed to a 15% contingency and the accompanying assignment of statutory fees to avoid imposing a total contingent fee greater than 40%.[6]

Under the Maine Bar Rules a contingent fee is one that is dependent on the "successful accomplishment or disposition of the subject matter of the agreement." Me. Bar. R. 8(a); *see also City of Burlington v. Dague,* 505 U.S. 557, 561, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (finding a fee contingent "if the obligation to pay depends on a particular result being obtained"). In the present case, the agreement required Roach to pursue a cross-appeal on the back pay issue as well as uphold the jury verdict. During the course of his representation Roach successfully argued for a $37,898 increase in Plaintiff's back pay award and was instrumental in the August 9, 1999 settlement increasing Plaintiff's recovery by an additional $100,000. Thus, the Court finds that Roach's achievements on appeal and re-

---

**5.** Webbert maintains that he is entitled to a greater portion of the interest accrued after the Court's May 31, 2002, partial distribution of funds to Plaintiff (Docket # 278). He seeks 31% of interest accrued on the settlement after that date. Webbert's request for a graduated increase in his share of the interest is unnecessarily complicated. The Court will distribute pro rata shares in the interests of both fairness and simplicity. *See Green v. Nevers,* 196 F.3d 627, 633 (6th Cir.1999) (not-

ing that absent statutory guidance, the award of settlement interest is within the discretion of the trial court).

**6.** The fee agreement provides that all disputes regarding the contract are to be governed by Massachusetts law. However, Roach concedes that he is subject to the Court's supervisory powers to assess the reasonableness of the fee agreement.

mand represent successful accomplishment of the subject matter of the fee agreement.

■■ Roach's 15% contingent fee coupled with an assignment of Plaintiff's statutory rights is reasonable. Plaintiff knowingly entered into the second fee arrangement, increasing the total contingency award imposed on her settlement to 40%. She was warned by Roach that the arrangement would·decrease her net recovery. Roach obtained significant success on Plaintiff's behalf in a difficult and complex matter. Moreover, courts should be reluctant to disturb contingent fee arrangements entered into by knowledgeable and competent parties. *Ryan,* 193 F.3d at 215. Accordingly, the Court orders that Roach & Wise be reimbursed $72,750, as well as a $7,898.42 pro rata share of the interest accrued to date, from Plaintiff's settlement.[7]

### 4. Plaintiff's Request for Release of Funds to Attorney Young

At the hearing, Plaintiff requested the release of an hourly fee directly to Attorney Young from the settlement proceeds. Thus, the Court orders that $23,183.63 be paid to Attorney Young from the settlement in accordance with Plaintiff's request.

### B. Defendant's Request for Statutory Fee Award

Defendant requests that the Court award it $41,415 in statutory fees and $2,753.70 in costs from Plaintiff's settlement. Defendant argues that it is entitled to fees resulting from Plaintiff's unsuccessful appeal of the December 23, 1999, order enforcing settlement for two reasons: (1) ADA case law recognizes an award of fees

to a prevailing defendant where the plaintiff continued the litigation after it clearly became unreasonable, totally unfounded, or frivolous to do so; or, alternatively, (2) district courts have general discretion to award attorney fees where an opposing party has acted in bad faith or vexatiously.

### 1. Totally Unfounded, Frivolous, or Otherwise Unreasonable

■■ The ADA fee-shifting provision grants the Court discretion to award the prevailing party a reasonable fee, including litigation expenses and costs. 42 U.S.C. § 12205 (1995). However, a prevailing defendant is only permitted an award under the ADA where the plaintiff's suit was "totally unfounded, frivolous, or otherwise unreasonable or that the plaintiff continued the litigation after it became clearly so." *Bercovitch v. Baldwin Sch., Inc.,* 191 F.3d 8, 10–11 (1st Cir.1999) (citing *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)). In determining whether a claim is frivolous, the Court must examine the claim at the time it was filed and avoid imposing hindsight upon an ultimately unsuccessful claim. *Tang v. R.I. Dep't of Elderly Affairs,* 163 F.3d 7, 13 (1st Cir. 1998) (applying the *Christiansburg* standard to the Title VII fee-shifting provision). Decisions to grant fees to a defendant should be rare. *Bercovitch,* 191 F.3d at 11. A district court retains discretion to deny or reduce fee applications even once a finding of frivolity has been made. *Tang,* 163 F.3d at 15.

■■ Factors relevant to finding frivolity include whether the legal issues raised were of first impression, whether

---

**7.** While Roach argues for costs in addition to the 15% contingent fee pursuant to the agreement, he has not submitted a separate accounting of his costs to the Court. As such, the Court does not address Roach's entitlement to any costs or expenses other than those included in the $72,750 figure.

existing precedent supports or forecloses a legal theory, and whether a plaintiff has failed to prove some prima facie element of her claim. *See No Barriers, Inc. v. Brinker Chili's Tex., Inc.*, 262 F.3d 496, 499 (5th Cir.2001); *Bercovitch*, 191 F.3d at 12; *Tang*, 163 F.3d at 13; *Andrade v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1193 (1st Cir.1996). The existence of bad faith is not a prerequisite to awarding a fee. *Tang*, 163 F.3d at 14.

■■ In the instant case, Defendant prevailed on the contested enforceability of the August 9, 1999 settlement. *Quint v. A.E. Staley Mfg. Co.*, 246 F.3d 11, 15 (1st Cir.2001). Thus, Defendant must show that continuing to challenge the enforceability of the settlement agreement was totally unfounded, frivolous or otherwise unreasonable.

Plaintiff's claims were not groundless in a legal sense at the time she first raised them. She argued prior to the December 23, 1999 ruling that Attorney Roach did not have authority to settle on August 9, 1999. The authority argument does have some legal basis in agency law. *See, e.g., Makins v. District of Columbia*, 277 F.3d 544, 547 (D.C.Cir.2002) (addressing whether a client is bound by a settlement negotiated entirely by her attorney). The Court held that Plaintiff orally assented to settlement, however, defeating her authority argument.

Plaintiff then appealed on the grounds that the settlement agreement anticipated reduction of the terms to writing. Plaintiff's arguments were subsequently dismissed by the appellate court. The lengthy course of the litigation in this matter makes it easy to view Plaintiff's settlement claims as frivolous in hindsight, but the Court may not impose a post hoc judgment upon Plaintiff. Because Plaintiff's claims were not entirely without foundation, the guiding principle that district

court's should rarely grant fees to a prevailing defendant controls in the present case. *See id.* at 11. Moreover, even assuming that the appeal was groundless, this Court retains discretion to deny Defendant's fee request. *Bercovitch*, 191 F.3d at 12. Thus, the Court declines to award statutory fees to Defendant under the fee-shifting statute.

2. Bad Faith or Vexatious Conduct

■■ Alternatively, Defendant argues that the Court should award fees to sanction Plaintiff for bad faith or vexatious conduct. A district court may award fees pursuant to its inherent supervisory powers where a losing party has acted in "bad faith, vexatiously, wantonly or for oppressive reasons." *Dubois v. United States Dep't of Agric.*, 270 F.3d 77, 80 (1st Cir. 2001) (quoting *Chambers v. NASCO*, 501 U.S. 32, 33, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Bad faith exists where a party knowingly or recklessly raises a meritless claim. *See Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). The vexatious prong requires a showing that the losing party's actions were frivolous, unreasonable or without foundation. *Local 285, Serv. Employees Int'l Union v. Nonotuck Res. Assocs.*, 64 F.3d 735, 737–38 (1st Cir.1995) (importing the *Christiansburg* frivolity standard). When employing its supervisory power, a court should award fees with "great circumspection and restraint" and "only in compelling situations." *Dubois*, 270 F.3d at 80.

Because the vexatious test imports the *Christiansburg* frivolity standard, as discussed above, Defendant has failed to demonstrate Plaintiff's opposition to the settlement was unreasonable or baseless. Defendant's arguments that Plaintiff's bad faith compels the imposition of fees are equally unconvincing. Defendant has pre-

sented no substantial evidence that Plaintiff knowingly or recklessly pursued a meritless claim. Rather, Defendant points to a letter authored by Attorney Webbert following the August 9 settlement discussion and Plaintiff's admission at trial that the events of the 9th "probably" unfolded as Defendant had described. Neither instance speaks to Plaintiff's intent in contesting the settlement. The letter reflects only Attorney Webbert's understanding of events. The purported admission simply acknowledges that events may have unfolded in one manner. Consequently, the Court declines to find that Plaintiff acted vexatiously or in bad faith.

C. Former Counsels' Requests for Statutory Fee Awards

■■■■ Attorneys Young, Webbert and Roach all seek fees from Defendant as prevailing parties in this matter pursuant to the ADA fee-shifting statutes. *See* 42 U.S.C. § 12205 (1995). Defendant contests all three award requests and Plaintiff opposes any award to Attorneys Webbert and Roach. A prevailing party may apply for "a reasonable attorney's fee, including litigation expenses, and costs ...." 42 U.S.C. § 12205. A plaintiff prevails when "actual relief on the merits of his claim materially alters the legal relationship between the parties." *Race v. Toledo–Davila*, 291 F.3d 857, 858 (1st Cir.2002) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992)). The reasonableness of a fee is determined according to the "lodestar" method. *Coutin v. Young & Rubicam P.R.*, 124 F.3d 331, 337 (1st Cir.1997). Under the lodestar approach, a reasonable fee is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

■■■ A court may adjust the lodestar calculation on the basis of twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment due to the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases. *Coutin*, 124 F.3d at 337. Fee requests may be enhanced for exceptional results, though such increases should be rare due to the risk of double counting work already included in the lodestar figure. *Lipsett v. Blanco*, 975 F.2d 934, 942–43 (1st Cir.1992). Additionally, a court can fine tune the lodestar figure by segregating time spent on unsuccessful claims, eliminating excessive or unproductive hours or assigning more realistic rates to time expended. *Coutin*, 124 F.3d at 337.

■■■ In determining a reasonable hourly rate, courts should examine, "the prevailing market rate in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Prevailing market rates are those "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* Attorneys may provide evidence of prevailing market rates, such as submitting affidavits, or the Court may rely on its own knowledge of the local legal market. *Andrade v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1190 (1st Cir.1996).

1. Attorney Young's Request for a Statutory Fee Award

██ Attorney Young requests an award of $5,502.50 in statutory fees and expenses for 27.1 hours spent preparing and finalizing the settlement papers. Young billed 25.4 of the hours at a rate of $210. Two paralegals billed the remaining 1.7 hours at $65 an hour. Defendant challenges the propriety of an award to Young generally. It contends that Young served a minor role in the proceeding and largely represented Plaintiff in the effectuation of a settlement that had already been negotiated. However, Defendant conceded at oral argument that Young was a prevailing party within the meaning of the fee-shifting statute for his success in defeating Defendant's motion opposing the phrase "under protest" included by Plaintiff on the settlement release form. Plaintiff makes no objection to Attorney Young's request.

a. Reasonable Hourly Rate

██ Young has been practicing employment law in Maine for approximately twenty years, including a significant number of discrimination cases. Although Attorney Young requests a rate of $210 an hour, he has submitted a number of affidavits attesting to the reasonableness of a rate of $185 an hour. In keeping with the Court's own knowledge of legal rates in the Bangor area, the Court reduces Young's requested rate to $185 an hour. The rate is reasonable for Attorney Young's limited role in the case given his experience and the legal community in which he practices.

b. Excessive Hours

██ After reviewing Young's itemized bill and Defendant's objections thereto, the Court further finds that the number of hours billed should be reduced to exclude time that the Court has determined was either excessive or redundant. Thus, the Court excludes 17.6 hours from the time billed by Young. The reduction reflects Young's relatively minor contribution to the settlement agreement over the span of approximately two weeks. The 7.8 hour award includes 5 hours expended finalizing the settlement and 2.8 hours spent after Plaintiff's execution of the settlement. The Court similarly excludes the 1.7 hours of paralegal time. Therefore, the Court hereby awards Attorney Young $1443 in attorney fees and $58 in costs.

2. Attorney Webbert's Statutory Fee Request

Attorney Webbert requests a total award of $154,233.60 in fees and expenses from Defendant.[8] Plaintiff and Defendant make a number of objections to this request: (1) Plaintiff objects that awarding Webbert statutory fees in addition to the contingent fee would constitute a prohibited double recovery; (2) Defendant contends that Webbert pursued a number of unsuccessful and redundant claims, including all the claims dismissed at summary judgment, Plaintiff's failure to accommodate claim and Plaintiff's FMLA claim; (3) Defendant argues that Webbert billed excessive time for a number of specific tasks, including digesting or summarizing depositions, trial preparation, preparation of expert witnesses and paralegal work; (4) Defendant objects to Webbert's travel and photocopying expenses; (5) Defendant objects to fees sought for the preparation of Webbert's fee application; and (6) Defendant maintains that a rate of $195 an hour

---

**8.** Webbert intends to direct $16,450 of any statutory fee award to Plaintiff for payments previously made to him under an hourly fee arrangement. Plaintiff similarly requests that the $16,450 be awarded directly to her.

is excessive in the Bangor legal community. The Court addressed these objections in turn. Additionally, the Court examines excessive or unreasonable costs resulting from Plaintiff's decision to terminate Webbert and hire out-of-state counsel for her appeal and remand.

### a. Double Recovery

A court exercising its supervisory powers may assess the reasonableness of a contingent fee arrangement when awarding statutory fees.[9] *See, e.g., Ross v. Douglas County,* 244 F.3d 620, 622 (8th Cir.2001) (per curiam); *Sargeant v. Sharp,* 579 F.2d 645, 648 (1st Cir.1978). While the initial statutory fee determination should be made without consideration of any accompanying contingent fee, a court has discretion to later fashion the award to avoid excessive compensation. *Sargeant,* 579 F.2d at 648. However, fee-shifting statutes dictate only what a losing party must pay, not what the prevailing party has contracted to pay her lawyer. *See Venegas v. Mitchell,* 495 U.S. 82, 90, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990) (holding that a contingent fee that exceeds a statutory award is not per se unreasonable or excessive). The statutes are intended to enable civil rights plaintiffs to retain competent counsel without cost to themselves. *Id.* at 87, 110 S.Ct. 1679. If civil rights plaintiffs are denied the ability to assign a statutory fee in addition to promising a contingent fee, they may be unable to retain counsel, thereby defeating the purpose of the fee-shifting statute. *See Jackson v. Rheem Mfg. Co.,* 904 F.2d 15, 17 (8th Cir.1990); *Mendoza v. Union St. Bus Co.,* 876 F.Supp. 8, 13 (D.Mass.1995). *But see Ross,* 244 F.3d at 622 (finding contingent fee incorporating statutory fee award into gross judgment amount unreasonable and instead requiring that the attorney be awarded the higher of the two amounts).

In the present case, Attorney Webbert and Plaintiff contracted at a lower contingency fee than that generally sought in comparable employment litigation. Initially the parties engaged in an hourly fee arrangement, but Plaintiff was unable to afford the payments. The two then agreed to a 25% contingent fee in addition to an assignment of Plaintiff's right to request statutory fees because Plaintiff felt Webbert's customary fee of 40% was excessive. Given that the parties freely negotiated the fee contract, the Court finds that payment of a statutory fee award to Webbert in addition to a contingent fee does not represent excessive compensation in this matter.

### b. Unsuccessful Claims

Claims that are severable should be segregated from the lodestar determination. *Coutin,* 124 F.3d at 339. A claim is unrelated and severable where based on facts and legal theories different from a plaintiff's successful claims. *Id.; see also Lipsett v. Blanco,* 975 F.2d 934, 940 (1st Cir.1992) (directing the court to

---

**9.** The Court notes that Webbert has standing to petition it directly for his fees. An attorney only has standing to argue for statutory fees directly provided his client first chooses to request the fees on the attorney's behalf. *Benitez v. Collazo–Collazo,* 888 F.2d 930, 933 (1st Cir.1989); *Bandera v. City of Quincy,* 220 F.Supp.2d 26, 44 (D.Mass.2002). Once requested, the fees themselves are directed to the attorney. *United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip.,* 89 F.3d 574, 577 (9th Cir.1996). However, the client may also waive, settle or negotiate her right to request statutory fees. *Howard v. Mail–Well Envelope Co.,* 150 F.3d 1227, 1230 (10th Cir.1998) (per curiam). In the instant case, Plaintiff assigned her right to request the fees to Attorney Webbert in the fee agreement. *See, e.g., Virani,* 89 F.3d at 579 (upholding agreement entered into by client assigning 40% of any statutory award).

consider whether the losing claims shared a "common core of facts" with the successful claims). Here, Plaintiff's unsuccessful sexual harassment and common law tort claims are unrelated to her successful ADA, FMLA and MHRA claims because they rest on facts and theories distinct from the successful disability-based claims. While the harassment and tort claims turned on Plaintiff's gender and tort concepts such as negligence, defamation and emotional distress, the successful claims were grounded in Plaintiff's carpal tunnel syndrome. However, Plaintiff's unsuccessful failure to accommodate claims share the same underlying facts with the disability-based claims and are, therefore, not severable.

Consequently, the Court reduces Webbert's request by $32,331.33 for time and costs expended on the unsuccessful claims. Included in this amount are hours billed specifically to the severable claims, a 50% reduction in undifferentiated time billed prior to summary judgment on Plaintiff's sexual harassment claims, a 10% reduction in all undifferentiated time billed before summary judgment on Plaintiff's tort claims and a proportionate reduction in costs.

### c. Excessive or Unproductive Time

 Whether time billed by Plaintiff is excessive or unproductive must be determined in light of how aggressively the Defense has argued its case. *Rodriguez–Hernandez v. Miranda–Velez*, 132 F.3d 848, 860 (1st Cir.1998); *see also Lipsett*, 975 F.2d at 939 (noting that a bitterly contested "Stalingrad defense" should be considered by the court when addressing objections to staffing). In the present case Defendant mounted an extremely capable and aggressive defense, posing a number of novel theories. Moreover, Defendant was very resistant to Plaintiff's initial attempts at settlement. Given the aggressive nature of the defense as well as the complexity of Plaintiff's disability case, Webbert's extensive preparation was warranted. The Court finds that no adjustment to the fee request is necessary for trial preparation, summarizing depositions, preparing expert witnesses or paralegal work.

### d. Expenses

 An award of out-of-pocket expenses is warranted where the costs are reasonable and necessary. *See Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir.1983) (per curiam). Costs incurred for transportation, lodging, parking, food and telephone are both reasonable and necessary. *Id.* The Court finds that Webbert's travel expenses, including the requested airfare from Augusta to Houlton, Maine, and his photocopying expenses are sufficiently documented and reasonable in amount.

### e. Preparation of Fee Applications

 Webbert seeks $7,100 for fees and expenses incurred pursuing a statutory fee award, representing 36 hours of work. Attorneys may recover fees for time spent on fee petitions, provided the request falls within the parameters of reasonableness and fairness. *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978). Although the statutory fee applications in this matter have been complicated by the vigorous objections of both Defendant and Plaintiff, 36 hours remains excessive. *See Okot v. Conicelli*, 180 F.Supp.2d 238, 249 (D.Me. 2002). Thus, the Court holds that 12 hours were productively expended preparing fee applications and reduces the request by $4,733.33.

### f. Hourly Rate

 Attorney Webbert specializes in employment and civil rights litigations and

has significant experience in the field. He has submitted affidavits supporting the requested rate of $195 an hour. Moreover, Webbert conducted the lion's share of work on Plaintiff's case, guiding her to success at trial and playing a role in her subsequent appeal and remand. Given Mr. Webbert's extensive experience in litigating employment law cases, the complexity of Plaintiff's case and the prevailing rates in the Bangor and Augusta legal communities, the Court concludes that the requested rate of $195 an hour is reasonable.

### g. Fees Sought For the First Appeal and Remand

■ Additionally, on October 28, 1999, the First Circuit remanded Plaintiff's fee application regarding her first appeal for further fact-finding. In particular, the Circuit Court directed this Court to examine whether it was reasonable for Plaintiff to retain higher-priced out-of-state counsel to handle her appeal and the extent to which her decision resulted in reasonably avoidable duplication of effort. Webbert, a Maine attorney, requests an award for his work on remand as local counsel for Roach, a Massachusetts attorney. However, because Webbert's work as local counsel would have been unnecessary had Plaintiff not chosen to retain out-of-state counsel, the same duplicity concerns are implicated by Webbert's request for fees on remand.[10] *See Ackerley Communications of Mass., Inc. v. Somerville*, 901 F.2d 170, 171 (1st Cir.1990) (noting that even where changing counsel is warranted, charging the losing party with significant duplication of effort resulting from

the switch is unreasonable). In light of Attorney Webbert's success at trial as well as his extensive experience litigating employment law cases, the Court finds that Webbert's limited role on remand was an unproductive and duplicative result of Plaintiff's decision to terminate him. Accordingly, the Court reduces Webbert's requested fee on remand by 6.95 hours or $1355.25 to account for duplication of effort.

As such, the Court awards Webbert $115,813.69 in fees and costs and orders that $16,450 of that amount be paid directly to Plaintiff.

### 3. Attorney Roach's Statutory Fee Request

Attorney Roach requests a total of $54,285.83 for work conducted on Plaintiff's first appeal and $22,816.76 for work done on remand.[11] Plaintiff and Defendant make a number of objections to the requests: (1) Plaintiff objects that the fee arrangement represents a prohibited double recovery; (2) Defendant asserts that Roach's requested hourly rate of $185 is unreasonable in light of prevailing rates in Maine and his litigation experience; (3) Defendant seeks a reduction in the appellate request for duplicative effort and inefficiency; and (4) Defendant maintains that Plaintiff does not represent a prevailing party on remand because she opposed the settlement ultimately enforced by the Court; or (5) alternatively, Defendant argues that Roach's remand request is excessive given Roach's familiarity with the reinstatement issues after his success on

---

**10.** The Court does not address duplicative costs incurred on appeal because Defendant concedes that Webbert is entitled to a fee award for substantive work performed during that period.

**11.** As discussed above, the Court notes that Roach has standing to request fees directly due to Plaintiff's assignment of that right in her fee agreement with counsel. *See Howard v. Mail–Well Envelope Co.*, 150 F.3d 1227, 1230 (10th Cir.1998) (per curiam).

appeal. The Court moves on to consider each objection.

### a. Double Recovery

█ Roach's fee arrangement with Plaintiff does not constitute a prohibited double recovery. The parties privately contracted to reach that arrangement, taking Plaintiff's pre-existing fee arrangement with Webbert into consideration. The 15% contingent fee reflects the parties' understanding that Plaintiff would not subject herself to a total contingent fee of greater than 40%. Consequently, the Court determines that a fee award in addition to a contingent fee is not excessive in this case.

### b. Hourly Rate

█ Attorney Roach's requested fee of $185 an hour is reasonable for an attorney of his experience in the Bangor and Augusta legal markets. Roach has significant civil rights litigation experience, including ADA, sexual harassment and gender discrimination cases. Plaintiff's case also posed a number of novel and complex questions of law warranting the requested fee. Moreover, his rates are supported by affidavits from two Maine attorneys, one practicing in Augusta.

### c. Appellate Fee Request

█ It is unreasonable to charge a losing party with significant duplication of effort resulting from the prevailing party's decision to change counsel. *Ackerley*, 901 F.2d at 171. In the present case, Plaintiff incurred a number of unnecessary and duplicative costs by terminating Webbert and hiring the Boston-based Roach. Roach has already voluntarily reduced the 595.1 hours billed on appeal by 64.2 hours to reflect any duplication of effort. However, given the similarity among the issues raised at trial and those raised on appeal and Mr. Webbert's pre-existing familiarity

with those issues, the Court makes a further reduction of 90 hours for duplicative and unnecessary work by Roach, amounting to $16,650. The Court also excludes two-thirds of the hours expended by Roach on his appellate statutory fee application, totaling $2,014.17

### d. Remand Fee Request

█ The Court first notes that Plaintiff represents a prevailing party on remand. A plaintiff prevails when "actual relief on the merits of his claim materially alters the legal relationship between parties." *Race v. Toledo–Davila*, 291 F.3d 857, 858 (1st Cir.2002) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992)). A material alteration occurs where a plaintiff becomes "entitled to enforce a judgment, consent decree, or settlement against the defendant." *Farrar*, 506 U.S. at 113, 113 S.Ct. 566; *see also Richardson v. Miller*, 279 F.3d 1, 3 (1st Cir.2002). Because the August 9, 1999 settlement ultimately enforced by the Court was achieved by Roach on remand and resulted in an additional $100,000 settlement for Plaintiff, she represents a prevailing party.

After reviewing Roach's billing statements and Defendant's objections thereto, the Court finds that the number of hours billed should be reduced to exclude time that the Court has determined was either unproductive or excessive. On that basis the Court excludes 20.1 hours from the time billed by Steven Roach and 6 hours from the time billed by associate Adam Whitney, totaling $4,258.50. Included in these exclusions are time spent preparing and reviewing the reinstatement issue, responding to Defendant's discovery requests and litigating a motion for judgment. Also excluded are 3.6 hours or $666 billed as part of Roach's general settlement efforts, but described as "Review and

Analyze Defendant's Motion on Remand." The Court further excludes 7.8 hours spent on the remand fee application, amounting to a reduction of $702.

Accordingly, the Court awards Roach $52,811.92 in fees and costs.

## III. CONCLUSION

Based on the foregoing:

(1) The Court GRANTS Gilbert & Greif's motion to enforce its lien and ORDERS that the sum of $17,736.05 from the settlement proceeds be paid to the firm in satisfaction of the attorney's lien (Docket # 299);

(2) The Court GRANTS Johnson & Webbert's motion to enforce its lien and ORDERS that $156,079.80 from the settlement proceeds be paid to the firm in satisfaction of the attorney's lien (Docket # 289);

(3) The Court GRANTS Roach & Wise's motion for enforcement of its lien and ORDERS that the firm be paid $80,648.42 from the settlement proceeds in satisfaction of the attorney's lien (Docket # 286);

(4) The Court GRANTS Plaintiff's request that $23,183.63 be paid directly to Attorney Young from the Settlement proceeds (Docket # 221) and ORDERS that the above amount, $23,183.63, be paid directly to the firm of McTeague, Higbee, Case, Cohen, Whitney & Toker;

(5) The Court ORDERS that the balance of the settlement proceeds, $101,742.63, be disbursed to Plaintiff;[12]

(6) The Court GRANTS Attorney Young's request for statutory fees (Docket # 221) and AWARDS fees and expenses in the amount of $1,501.00 to the firm of McTeague, Higbee, Case, Cohen, Whitney & Toker;

(7) The Court GRANTS Attorney Webbert's request for attorney fees and expenses (Docket # 229) and AWARDS the amount of $115,813.69 to the firm of Johnson & Webbert. The Court further ORDERS that Webbert pay $16,450 of the award to Plaintiff;

(8) The Court GRANTS Attorney Roach's request for attorney fees and expenses (Docket # 161, 224) and AWARDS the amount of $52,811.92 to the firm of Roach & Wise;

(9) The Court DENIES Defendant's motion for release of funds (Docket # 315);

(10) The Court DENIES Defendant's application for a fee award (Docket # 231); and,

(11) The Court DENIES Plaintiff's request for a partial release of settlement funds (Docket # 312).

SO ORDERED.

---

12. The balance does not include a Court management fee amounting to 10% of the interest accrued to date on the settlement, or $5,265.61.