**Lionel ROGERS, Plaintiff,**

**v.**

**Gerald L. COFIELD, Jr., Defendant.**

**Civil Action No. 08–10684–MBB.**

United States District Court,
D. Massachusetts.

March 31, 2013.

Lawrence P. Murray, Catherine Elizabeth Murillo, Burns & Levinson, Boston, MA, for Plaintiff.

Lisa Skehill Maki, Alexandra B. Alland, Ian D. Prior, City of Boston Law Department, Boston, MA, for Defendant.

MEMORANDUM AND ORDER RE: PLAINTIFF LIONEL ROGERS' FEE APPLICATION (DOCKET ENTRY # 56); PLAINTIFF LIONEL ROGERS' SUPPLEMENTAL FEE APPLICATION (DOCKET ENTRY # 78); PLAINTIFF LIONEL ROGERS' SECOND SUPPLEMENTAL FEE APPLICATION (DOCKET ENTRY # 83)

BOWLER, United States Magistrate Judge.

Pending before this court is a motion for attorneys' fees filed by plaintiff Lionel

Rogers ("plaintiff") and two supplemental motions to recover reasonable fees incurred after the filing of the original motion. (Docket Entry ## 56, 78 & 83). After a four day trial, the jury awarded plaintiff $101,188.30 in this unlawful arrest and excessive force civil rights suit against defendant Gerald L. Cofield, Jr. ("Officer Cofield"), an officer of the Boston Police Department.

Supported by an affidavit, the original petition seeks $117,270.50 in fees and $6,128.51 in costs. (Docket Entry # 56). The supplemental petition and supporting affidavit request $14,568.00 in fees and $329.74 in costs for opposing Officer Cofield's two post trial motions. (Docket Entry ## 78 & 78–2). The second supplemental petition and supporting affidavit ask for $10,714.00 in fees in connection with responding to this court's request for briefing on qualified immunity. (Docket Entry ## 83 & 84). The total request is therefore $142,552.50.

Officer Cofield opposes all three filings. (Docket Entry ## 73, 75, 76, 79 & 86). He seeks a reduction of the initial $117,270.50 request to $34,281.82 and a further reduction of the $14,568.00 and $10,714.00 requests. He contends that any award is subject to a substantial reduction because plaintiff stipulated to a dismissal of defendant City of Boston ("the City") and a number of claims shortly before trial commenced. Officer Cofield submits that plaintiff cannot recover for work performed on these unsuccessful, "abandoned" claims. Officer Cofield also seeks a reduction of the fees because plaintiff prevailed on only three of the six claims submitted to the jury.[1] Plaintiff argues that the unsuccessful claims are factually interrelated thereby precluding segregabil-

ity for time spent on the successful claims from time spent on the unsuccessful claims.[2]

Officer Cofield additionally maintains that the bills: (1) include unproductive and unnecessary work; (2) fail to adequately document the tasks and distinguish between core and non-core work; (3) charge for trial preparation and courtroom time for a second attorney who did not meaningfully participate in the trial; and (4) charge excessive hourly rates.

Throughout these proceedings, Lawrence P. Murray, Esq. ("Attorney Murray"), a partner at the firm of Burns & Levinson LLP, represented plaintiff. In late January 2011, shortly before the April 2011 trial, Elizabeth Brady Murillo, Esq. ("Attorney Murillo"), a seventh year associate at Burns & Levinson LLP, began assisting Attorney Murray.

### PROCEDURAL BACKGROUND

Plaintiff initially filed this action against the City as well as Officer Cofield in Massachusetts Superior Court (Suffolk County) on December 4, 2007. The suit involves events that occurred on December 5, 2004, and include plaintiff's arrest at the area B–2 police station in Roxbury, Massachusetts. The complaint raised the following causes of action: (1) false arrest and excessive force against the City in violation of 42 U.S.C. § 1983 ("section 1983") (Count I); (2) false arrest and excessive force against Officer Cofield in violation of section 1983 (Count II); (3) false arrest and excessive force against Officer Cofield and the City ("defendants") in violation of sections 11H and 11I of Massachusetts General Laws chapter 12 ("MCRA") (Count III); (4) assault and battery against Officer Cofield (Count IV); (5) false imprisonment

---

**1.** *See* fn. 11.

**2.** Plaintiff presented this assertion during oral argument.

against Officer Cofield (Count V); (6) negligent infliction of emotional distress against Officer Cofield (Count VI); (7) negligence against the City and Officer Cofield (Count VII); (8) negligent hiring and supervision against the City (Count VIII); (9) malicious prosecution against Officer Cofield (Count IX); and (10) abuse of process against Officer Cofield (Count X).

On February 27, 2008, plaintiff filed a motion to appoint a special process server and to extend the time for service of the summons and the complaint.[3] Officer Cofield takes issue with the 3.10 hours Attorney Murray spent with respect to these motions. In late April 2008, the City removed this action to the United States District Court for the District of Massachusetts. Officer Cofield and the City each filed an answer. On July 1, 2008, the parties consented to proceed before this court for all proceedings pursuant to 28 U.S.C. § 636(c). As a result, this court is familiar with the entire proceedings.

Discovery was uneventful. Officer Cofield and the City filed a motion for a protective order to prevent public dissemination of Officer Cofield's personnel records and other sensitive information. Plaintiff did not oppose the motion which this court allowed without a hearing. Counsel cooperated with each other in seeking a number of extensions of fact discovery and expert disclosures by joint motions.

As to expert disclosures, in October 2009, the parties filed a joint motion to extend the deadlines because of a miscalculation of plaintiff's deadline in a prior motion.[4] On April 16, 2010, the parties filed another joint motion to extend the deadlines for expert disclosures. During a May 24, 2010 status conference, this court set an August 2, 2010 deadline for plaintiff to produce an expert report for a medical expert who he represented had been identified.[5] This court set an August 23, 2010 deadline for defendants to provide their expert report. Plaintiff did not provide the expert disclosure by August 2, 2010. Defendants however did provide plaintiff with their expert disclosure on August 24, 2010. (Docket Entry # 74–2). At a status conference on September 10, 2010, Attorney Murray represented that plaintiff had borrowed funds to retain an expert. Accordingly, this court allowed plaintiff an extension to October 12, 2010. The date passed without production whereupon this court set a further deadline of December 1, 2010, for plaintiff's expert disclosure. On December 3, 2010, plaintiff advised defendants he would not be using the medical expert to testify at trial.

On January 13, 2011, defendants filed a motion to disclose plaintiff's Criminal Offender Record Information ("CORI").[6] Plaintiff opposed the motion in light of his

3. Massachusetts law allows the court to appoint a special process server under Rule 4(c), Mass. R. Civ. P. (2007). Service of the summons and the complaint is required 90 days after filing a complaint. *See* Mass. R. Civ. Pro. Rule 4(j) (2007). The 90 day time period was due to expire on Monday, March 3, 2008.

4. Officer Cofield seeks to disallow time that Attorney Murray spent reviewing Officer Cofield's expert report and performing other expert related work.

5. Attorney Murray participated in the conference by telephone because of another, conflicting court proceeding. Officer Cofield takes issue with the .50 hours Attorney Murray expended to participate in the conference and communicate with opposing counsel by email.

6. Officer Cofield submits that plaintiff is not entitled to any attorneys' fees in connection with the CORI motion.

testimony that he had no prior convictions that might be admissible under Rule 609, F.R.E. On January 31, 2011, this court held a hearing and allowed the motion. Plaintiff's record revealed a number of prior arrests by officers working at the area B–2 police station in Roxbury. During cross examination at trial, plaintiff testified about being arrested five or eight times before the December 5, 2004 incident.

On February 11, 2011, with trial set to commence on April 4, 2011, the parties filed a joint stipulation dismissing all of the claims against the City. Prior thereto at the May 24, 2010 conference, Attorney Murray represented that, "We are probably moving" and "will be voluntarily moving to dismiss most, if not all, the claims against the City." [7] The stipulation also dismissed Count VII against Officer Cofield. During or shortly before trial, plaintiff decided not to pursue the malicious prosecution claim (Count IX), the negligent infliction of emotional distress claim (Count VI) and the MCRA claim against Officer Cofield (Count III).[8] As narrowed, the case tried before the jury consisted of section 1983 violations based on a false arrest and the use of excessive force as well as common law claims for false arrest, assault, battery and abuse of process.[9]

On March 17, 2011, plaintiff filed an assented to motion to continue the final pretrial conference for one week because of a prepaid vacation for Attorney Murray.[10] This court allowed the extension. Trial commenced on April 4, 2011. Three days later, the jury returned a verdict in plaintiff's favor on the section 1983 claim(s), the common law false arrest claim and the common law assault claim and in Officer Cofield's favor on the battery and the abuse of process claims. Without objection, the verdict form did not distinguish between the false arrest and the excessive force section 1983 claims.[11]

The jury awarded plaintiff $26,188.30 in past compensatory damages attributed entirely to the section 1983 claims and $75,000.00 in future compensatory damages. After discharging the jury, this

---

7. Officer Cofield's position that Attorney Murray "agreed to voluntarily dismiss the claims against the City" (Docket Entry # 75, § III(d)) is therefore not entirely correct. On the basis of this purported agreement to dismiss the claims against the City, Officer Cofield seeks to preclude fees incurred for Attorney Murray's work concerning the City and filing the stipulation after May 24, 2010. *See* fn. 20.

8. Officer Cofield argues that plaintiff is not entitled to fees for 2.3 hours of work on the "frivolous" malicious prosecution claim voluntarily dismissed prior to trial. The facts established by deposition prior to the trial indicated that the claim was not frivolous. A dismissal for want of prosecution does not necessarily jettison the claim. *See Britton v. Maloney*, 196 F.3d 24, 31 (1st Cir.1999) (dismissal by "court for want of prosecution" may support malicious prosecution claim "as long as the circumstances remain consistent with the innocence of the accused"); *see generally Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 858 N.E.2d 746, 759 (2006).

9. When asked during trial, plaintiff agreed to a separate submission of an assault claim and a battery claim. (Docket Entry # 66, p. 3, n. 2).

10. Officer Cofield seeks to disallow the 1.70 hours of work in the March 16, 17 and 18, 2011 entries performed by Attorney Murillo. Officer Cofield maintains "it is not proper" to award fees for Attorney Murray's vacation based on his vacation plans. (Docket Entry # 75, § III(h)); (Docket Entry # 74–13, p. 24).

11. Officer Cofield requests a 25% global reduction based on plaintiff's limited success in prevailing on only three claims (the section 1983 false arrest claim, the common law false arrest claim and the common law assault claim) of the six claims submitted to the jury. (Docket Entry # 75, § III(i)(1)).

court inquired whether plaintiff was seeking prejudgment interest.[12] Plaintiff responded in the affirmative and this court therefore directed the parties to confer about the matter. On April 14, 2011, the parties filed a stipulation that plaintiff was not seeking prejudgment interest.

On May 5, 2011, Officer Cofield filed a detailed, 25 page motion for judgment as a matter of law or for a new trial. In opposing the motion, plaintiff filed a 12 page brief. Officer Cofield also attacked the amount of the verdicts in a motion for a remittitur and a 15 page supporting memorandum. Plaintiff filed a five page opposition. The nature of the verdicts, including the amount of damages and the interrelationship between the common law and section 1983 verdicts, as well as a question from the jury engendered an atypical complexity to a seemingly straight forward false arrest and excessive force suit. In a written opinion, this court upheld the damages awards and the verdicts in their entirety. (Docket Entry # 80).

On the issue of qualified immunity, this court denied immunity for the section 1983 false arrest claim and requested further briefing regarding the section 1983 excessive force claim.[13] (Docket Entry # 80). Officer Cofield sought a finding of qualified immunity in a 12 page brief and an additional four page reply brief to plaintiff's six page opposition. In a second Memorandum and Order, this court denied immunity on the section 1983 excessive force claim because there was no plaintiff favorable section 1983 excessive force verdict. Al-

ternatively, even if the jury awarded damages on the section 1983 excessive force claim, this court found that the award of past damages was not subject to immunity because plaintiff is entitled to select the body of law under which the damages will be paid. (Docket Entry # 88). This court denied immunity for the $75,000.00 future damages because it was not specific to any one claim. Furthermore, plaintiff testified that the incident, which included the false arrest, occurred in front of his children thereby causing him mental and emotional pain. Plaintiff was therefore successful in opposing the immunity defense insofar as he recovered the entirety of the jury's damages awards. Officer Cofield was successful to a degree insofar as the Memorandum and Order (Docket Entry # 88) acknowledged the absence of a plaintiff favorable section 1983 excessive force claim.

## FACTUAL BACKGROUND [14]

The facts supporting the false arrest and the purported excessive force occurred at the area B–2 police station on December 5, 2004. After spending the day with his four children, plaintiff, who was in the process of a divorce, arrived at the station, a prearranged drop off location for the children. Plaintiff's then wife, Artemisa Monteiro–Rogers ("Monteiro–Rogers"), was waiting at the station along with a friend, Elizabeth Mercado ("Mercado"), for the scheduled 4:00 p.m. drop off. Plaintiff arrived late at approximately 5:30 p.m.

12. Officer Cofield objects to compensating the 1.10 hours of time Attorney Murillo spent the following day reviewing case law concerning prejudgment interest, conferring with plaintiff and Attorney Murray about the same and reviewing the verdict form.

13. Officer Cofield challenges various billing entries regarding qualified immunity.

14. The Memorandum and Order denying the post trial motions provides an extensive discussion of the factual background. This truncated summary provides a basis to examine the interrelated nature of the successful section 1983 false arrest claim and the unsuccessful claims including the claims against the City.

after seeing an afternoon movie with his children.

Officer Cofield was working the front desk. When plaintiff walked into the lobby, Officer Cofield came out into the lobby from behind the front desk. He asked plaintiff to speak with him a number of times. The jury heard divergent accounts of exactly what took place.

According to Officer Cofield, plaintiff became loud and ended up against a wall exhibiting bizarre behavior. When Officer Cofield turned his back away from plaintiff to tell Monteiro–Rogers to take her family and leave the building, plaintiff pushed Officer Cofield from behind and, when Officer Cofield turned back to plaintiff, plaintiff pushed him again. Officer Cofield then told plaintiff he was under arrest (Tr. III–100–101) [15] and proceeded to effect or attempt to effect an arrest for assault and battery on a police officer and disturbing the peace.

Plaintiff's testimony, supported in part by Mercado's testimony, provides evidence that plaintiff did not push or touch Officer Cofield and that plaintiff was not loud at this point in time. According to plaintiff, he did not get loud until being told he was under arrest. Plaintiff further testified that Officer Cofield threw him against the wall, bent him over, kneed him in the stomach and threw him to the floor.

According to plaintiff, while he was on the floor and Officer Cofield was on top of plaintiff with his knee on plaintiff's back, three or four other police officers came through the door next to the front desk. Plaintiff testified that one or more officers picked him up and that Officer Cofield told him to put his hands behind his back and, according to plaintiff, told him he was under arrest.

With Officer Cofield holding plaintiff's hands behind his back, plaintiff started walking towards the door leading to a cell block and a booking area. According to plaintiff, when they reached the area near the door or were going through the door, plaintiff felt a hard push in the middle of his back and fell to the ground hitting his face and his knee. Officer Cofield denied pushing plaintiff and, instead, fell on top of plaintiff. While on the floor, plaintiff testified that he used his cellular telephone to speed dial Laura Wilkerson ("Wilkerson"), his girlfriend at the time, and then yelled into the telephone that police were attacking him. The call lasted approximately 30 seconds. Lieutenant Detective Patrick Cullity then picked plaintiff up and escorted him to the booking desk together with another officer.

The booking took place at 5:55 p.m., less than 30 minutes after plaintiff's arrival at the station. A few hours later, Wilkerson arrived at the station. Plaintiff went back to Wilkerson's house after she posted bail. He went to a hospital a few days later and had X-rays of his knee and back. After the incident, plaintiff remained at Wilkerson's house and stayed in bed for the next week or two icing his knee and applying heat to his back.

On December 6, 2004, Officer Cofield applied for a criminal complaint citing the applicable statutes for assault and battery on a police officer and disturbing the peace. A few days after the incident, plaintiff received a copy of the criminal complaint charging him with assault and battery on a police officer in violation of section 13D of Massachusetts General

---

**15.** *See* Fed.R.Civ.P. 32(a)(3); F.R.E. 801(d)(2). Officer Cofield elsewhere testified that he did not tell plaintiff he was under arrest. Plaintiff testified that Officer Cofield told him he was under arrest after plaintiff got up from the ground where Officer Cofield had thrown him.

Laws chapter 265 and disorderly conduct in violation of section 53 of Massachusetts General Laws chapter 272. Legal proceedings regarding the charges continued for a year and a half until a dismissal of the complaint for want of prosecution on June 1, 2006.

## DISCUSSION

■ Having recovered a substantial damages award under section 1983, plaintiff is a prevailing party and entitled to attorneys' fees and costs under 42 U.S.C. § 1988 ("section 1988"). *See Bogan v. City of Boston,* 489 F.3d 417, 427 (1st Cir.2007) ("[s]ection 1988 provides that attorney's fees may be awarded 'in any action or proceeding to enforce provisions of § 1983'"). "The lodestar method" constitutes the preferred method to calculate fees "that fall within the ambit of section 1988." *Coutin v. Young & Rubicam Puerto Rico, Inc.,* 124 F.3d 331, 337 (1st Cir. 1997); *accord Spooner v. EEN, Inc.,* 644 F.3d 62, 67 (1st Cir.2011) (lodestar method is "the conventional framework that courts use in fashioning fee awards"). This case is no exception.

■ The lodestar method initially "involves multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d 331, 336 (1st Cir.2008); *accord Spooner v. EEN, Inc.,* 644 F.3d at 68 (lodestar ascertains "the number of hours productively expended and multipl[ies] that time by reasonable hourly rates"). In determining the hours productively spent, a court may adjust the hours "to remove time that was unreasonably, unnecessarily or inefficiently devoted to the case and subject to principles of interconnectedness, the trial court may disallow time spent litigating failed claims." *De Jesus Nazario v. Morris Rodriguez,* 554 F.3d 196, 207 (1st Cir.2009)

(citation omitted); *see Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir.1984) (determining "number of hours actually spent" and subtracting hours that are "duplicative, unproductive, excessive, or otherwise unnecessary"); *see also Lipsett v. Blanco,* 975 F.2d 934, 939 (1st Cir.1992) (whether time billed by the plaintiff's attorney is excessive or unproductive must also be determined in light of how aggressively counsel argued the case).

### I. *Hours Expended*

#### A. *Inadequate Documentation and Non–Core Work*

Officer Cofield challenges the adequacy of plaintiff's billing records. He posits that "many" entries combine more than one task or provide uninformative descriptions such as "file review." (Docket Entry # 75, § III(n)). As a result, he seeks to reduce the time spent for entries that lack sufficient detail.

Plaintiff, as the fee applicant, "bears the burden of proving the reasonableness of the hours [he] claims." *Burke v. Mc-Donald,* 572 F.3d 51, 63 (1st Cir.2009). Plaintiff therefore "has the burden of producing materials that support the request." *Hutchinson ex rel. Julien v. Patrick,* 636 F.3d 1, 13 (1st Cir.2011). Such "materials should include counsel's contemporaneous time and billing records, suitably detailed." *Id.; see Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 295–296 (1st Cir.2001) ("attorneys' contemporaneous billing records constitute the usual starting point" to fashion award).

■ A court may either discount or, in egregious cases, disallow hours where time records are "too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like." *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d at

336; *accord Gay Officers Action League v. Commonwealth of Puerto Rico,* 247 F.3d at 297 (records kept "in reasonable detail" are ordinarily required to support fee request); *Grendel's Den, Inc. v. Larkin,* 749 F.2d at 952. Indeed, as explained by the First Circuit in *Grendel's Den,* "the absence of detailed ... time records, except in extraordinary circumstance, will call for a substantial reduction in any award or, in egregious cases, disallowance." *Grendel's Den, Inc. v. Larkin,* 749 F.2d at 952. Accordingly, this court may eliminate billed hours that are not precise enough to assess whether the time spent was reasonable, *see Alfonso v. Aufiero,* 66 F.Supp.2d 183, 194 (D.Mass.1999), or engage in a global reduction, *see, e.g., Torres–Rivera v. O'Neill–Cancel,* 524 F.3d at 336 (lower court's 15% global reduction based on inadequate documentation was not abuse of discretion).

▮ The level of detail necessarily varies from case to case. Overall, the fee applicant "must keep records in sufficient detail" to permit "a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Hensley v. Eckerhart,* 461 U.S. 424, 441, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). As also noted by the Court in *Hensley,* counsel should "at least ... identify the general subject matter of his time expenditures." *Id.* at 437 n. 12, 103 S.Ct. 1933; *see Tennessee Gas Pipeline Co. v. 104 Acres of Land,* 32 F.3d 632, 634 (1st Cir.1994) ("this court has required ... specific accounting" of tasks performed, dates, and hours expended per task). Finally, in deciphering the entries, clarification may "com[e] from surrounding billing entries as well as the docket." *Carmel & Carmel PC v. Dellis Construction, Ltd.,* 858 F.Supp.2d 43, 47 (D.D.C.2012); *see, e.g., Showtime Entertainment LLC v. Ammendolia,* 885 F.Supp.2d 507, 532 (D.Mass.2012) (entries

referring to " 'legal research' " without identifying claims nonetheless "sufficiently specific" because "timing of those entries" made it clear that "research concerned" summary judgment motion on certain claims).

In lieu of a global reduction based on inadequate documentation, this court prefers a more precise examination and determination with respect to each entry. A sample of the entries that Officer Cofield flags as inadequately documented consists of the following: February 26, 2008; July 23, 2008; November 4, 2008; December 1, 2008; January 8, 2009; January 13, 2009; January 16, 2009; January 20, 2009; January 22, 2009; January 26, 2009; February 2, 2009; June 8, 2009; June 15, 2009 (both entries); June 16, 2009; June 17, 2009 (both entries); June 26, 2009 (first entry); July 13, 2009; July 16, 2009; July 17, 2009; July 22, 2009; August 5, 2009 (first entry); September 15, 2009; September 28, 2009; October 21, 2009; November 19, 2009; April 7, 2010; April 23, 2010; March 24, 2011; and April 4, 2011. (Docket Entry # 74–13).

▮ With respect to a number of these and other entries, Officer Cofield contends they include non-core work without distinguishing between the time spent on core versus non-core work. A number of courts in this district, including this court, have at times adhered to the core versus non-core distinction. *Showtime Entertainment LLC v. Ammendolia,* 885 F.Supp.2d at 533 n. 29 (collecting cases while noting the distinction is "not universally accepted"); *see generally System Management, Inc. v. Loiselle,* 154 F.Supp.2d 195, 201–202 (D.Mass.2001) (explaining genesis of the distinction and occasional adherence to it by the First Circuit). Core work includes "legal research, writing of legal documents, court appearances, negotiations with opposing counsel,

monitoring, and implementation of court orders. Non-core work consists of less demanding tasks, including letter writing and telephone conversations." *Brewster v. Dukakis,* 3 F.3d 488, 492 n. 4 (1st Cir.1993) (recognizing this definition as "the district court's parlance" and noting prior First Circuit case that "upheld similar taxonomy").[16] Time spent on "clerical or secretarial tasks" therefore "ought not to be billed at lawyers' rates, even if a lawyer performs them." *McMillan v. Massachusetts Society for Prevention of Cruelty To Animals,* 140 F.3d 288, 308 (1st Cir.1998). The nature of the task may therefore warrant a lower hourly rate. *Id.* Likewise, travel time is ordinarily reimbursed at a lower hourly rate than the rate applicable "to the attorney's substantive labors." *Hutchinson ex rel. Julien v. Patrick,* 636 F.3d at 15; *see also Maceira v. Pagan,* 698 F.2d 38, 40 (1st Cir.1983). There is, however "no hard-and-fast rule establishing what percentage of an attorney's standard billing rate is appropriate for travel time." *Id.* At present, this court in its discretion examines each task and, if appropriate and reasonable, assigns the time spent on the task to a non-core or a core category. The appropriate hourly rates for each category are addressed in a separate section.

■ Beginning with the entries challenged on the basis of inadequate documentation and/or as constituting non-core work, this court turns to the February 26, 2008 entry. This entry adequately provides the date and the nature of the task involved, to wit, a "court appearance" involving "appoint[ing] special server" and preparing a "motion to extend time to serve process." (Docket Entry # 58–1). All of the tasks concern the same subject. Officer Cofield's complaint that the tasks are not individualized or divided "between travel time, waiting and actual legal work" (Docket Entry # 74–13) does not prevent this court or Officer Cofield from assessing the reasonableness and necessity for the work but it does reduce the ability to gauge the amount of travel time. Thus, eschewing a reduction based on inadequate detail, half of the time is attributable as non-core travel time with the remaining time attributable to the core work of appearing in court.[17]

The same reasoning applies to the next entry challenged on the basis of inadequate documentation. Attorney Murray adequately detailed the two hours of work performed on July 23, 2008, all of which relate to preparing a joint scheduling statement. Plaintiff filed the resulting proposed scheduling statement under Rule 16, Fed.R.Civ.P. ("Rule 16"), and LR. 16.1 and attended the status conference on the same day. This court adopted the schedule at the conference. Two hours of time to prepare and revise the statement, including conferring with opposing counsel, and then attending the status conference is more than reasonable. In fact, it is one of

---

**16.** District courts after *Brewster* repeatedly cite this language as setting out the distinction between core and non-core work. *See Showtime Entertainment LLC v. Ammendolia,* 885 F.Supp.2d at 533; *McGahey v. Harvard University Flexible Benefits Plan,* 685 F.Supp.2d 181, 185 (D.Mass.2010); *Bogan v. City of Boston,* 432 F.Supp.2d 222, 231–232 (D.Mass.2006); *Wilson v. McClure,* 135 F.Supp.2d 66, 72 (D.Mass.2001); *Alfonso v. Aufiero,* 66 F.Supp.2d 183, 196 (D.Mass. 1999).

**17.** Appointing and accomplishing service with a special process server is not clerical work and appropriately compensated as core work. The April 18, 2008 work to prepare and serve pleadings is core work whereas Attorney Murray's telephone conference with plaintiff about the same subject matter is non-core work. The .50 hours of time expended is divided equally between core and non-core work.

a number of occasions wherein Attorney Murray's expertise and efficiency reduced the time spent on various tasks. Officer Cofield's additional attempt to separate core from non-core time and apply a lower hourly rate to the latter category for this entry is inappropriate. Reviewing and revising legal documents, including Rule 16 statements,[18] and appearing in court require a level of skill commensurate with core rather than non-core work. *See Brewster v. Dukakis,* 3 F.3d at 492 n. 4 (core work includes "writing of legal documents" and "court appearances").

With respect to a number of the foregoing entries beginning with the November 4, 2008 entry, Officer Cofield seeks a 50% reduction in the time Attorney Murray expended in reviewing or drafting discovery requests or performing other discovery matters because the entries are "inadequately detailed." In particular, the entries combine review of discovery requests for the abandoned City claims with the individual claims. (Docket Entry # 74–13). They also involve non-core work, according to Officer Cofield. Entries that fall into this category include: November 4, 2008; January 8, 2009; January 13, 2009; January 16, 2009; January 20, 2009; January 22, 2009; January 26, 2009; February 2, 2009; June 8, 2009; June 15, 2009 (both entries); June 16, 2009; June 17, 2009 (both entries); July 13, 2009; July 16, 2009; July 17, 2009; July 22, 2009; October 21, 2009; November 19, 2009; January 15, 2010; February 3, 2010; April 7, 2010; and April 23, 2010.

Officer Cofield's challenge to these entries as "inadequately detailed" or, stated

otherwise, failing "to distinguish" whether the discovery work relates "to the abandoned City claim" or Officer Cofield's claims is misplaced. Notably, Officer Cofield acknowledges that plaintiff "neglected to conduct any meaningful discovery on his City claims." (Docket Entry # 75, p. 7). The observation corresponds with this court's experience in overseeing the discovery. Thus, there was little if any discovery about the customs and policies of the City of Boston's police department. The discovery was also not focused on the negligent hiring, training and supervision of the City's police officers.[19] Examining the foregoing entries, they provide sufficient detail to fairly evaluate the nature and the need for the service. Accordingly, it is not appropriate to discount or reduce the time expended in the foregoing entries because of a failure to distinguish between the discovery concerning the abandoned claims against the City and the successful section 1983 claim against Officer Cofield.

 Officer Cofield additionally attacks these discovery related entries as seeking reimbursement for non-core work. Unless it involves a substantive dispute, legal strategy or negotiations, drafting letters to counsel is a less demanding task than performing legal research and drafting legal briefs. As such, it is properly classified as non-core work in the context of discovery. Drafting, reviewing and finalizing discovery is not secretarial or clerical work but it entails a lower level of skill and legal expertise than appearing in court, performing legal research, writing legal briefs or conducting a deposition.[20]

---

**18.** The second July 18, 2008 entry likewise reflects core work.

**19.** As discussed below, these claims against the City (counts I and VIII) are not interrelated under the facts or the law with the successful section 1983 claim against Officer Cofield.

**20.** As set forth in Roman numeral III, this court sets a relatively high hourly rate for non-core work. The rate adequately addresses the higher level of skill for the discovery work. *See Grendel's Den, Inc. v. Larkin,* 749 F.2d at 951 (hourly rate considers factors

*See Alfonso v. Aufiero*, 66 F.Supp.2d 183, 196 (D.Mass.1999) (classifying "responding to discovery requests" as non-core work); *see also Brewster v. Dukakis*, 3 F.3d at 492 n. 4. With the exception of work related to a deposition, the discovery entries primarily entail non-core work. *See Alfonso v. Aufiero*, 66 F.Supp.2d at 196. Exercising this court's discretion, the following entries for discovery matters warrant classification as non-core, less complex tasks subject to the lower hourly rate: November 4, 2008; January 8, 2009; January 13, 2009; January 16, 2009; January 20, 2009 (.50 hours);[21] January 22, 2009; January 26, 2009; February 2, 2009 (.75 hours);[22] June 8, 2009; June 15, 2009 (both entries); June 16, 2009; June 17, 2009 (both entries); July 13, 2009; July 16, 2009; July 17, 2009; July 22, 2009; October 21, 2009; November 19, 2009; January 15, 2010; February 3, 2010; April 7, 2010; and April 23, 2010.

Turning to the entries that Officer Cofield challenges as inadequately detailed primarily based on a failure to differentiate travel from legal work, he objects to the December 1, 2008 entry ("Court appearance at USDC re: status") for 1.50 hours of Attorney Murray's time. Officer Cofield additionally submits that the entry fails to distinguish between core and non-core work such as travel and waiting time. (Docket Entry # 74–13). Attendance at the court ordered status conference was required. Time spent in court constitutes core work even if it involves updating the

court on the progress of discovery. It is neither a secretarial nor a clerical task. The conference, however, did not last 1.50 hours thus indicating that the time spent included travel time. Accordingly, this court attributes .75 of these hours to non-core work. The same ruling and reasoning apply to the first June 26, 2009 entry.

Attorney Murray spent ten hours traveling to and from Islip, New York and conducting a deposition of Mercado, a key witness, on August 5, 2009.[23] After eliminating .10 hours as excessive, Officer Cofield seeks to attribute the remaining time (9.90 hours) to the category of non-core work because the entry fails to distinguish between travel time and deposition time. The surrounding billing entries elucidate the portion of the time attributable to traveling to Islip on August 5, 2009. In particular, Attorney Murray conducted the deposition on August 5, 2009. The next day, he spent 3.50 hours traveling back from Islip presumably to Boston. Accordingly, on August 5, 2009, Attorney Murray spent 6.50 hours at the deposition and conferring with plaintiff about the deposition. The 3.50 hours of travel falls into the non-core category. In light of the importance of Mercado's testimony, this court declines to assign any portion of the remaining 6.50 hours as a non-core task.

With respect to the September 15, 2009 entry ("various emails with client") of .80 hours of work, Officer Cofield seeks to

including the expertise the work required); fn. 38 infra.

21. The 1.00 hours expended on January 20, 2009, was to "Draft discovery; research." (Docket Entry # 58–1). Research constitutes core work. Officer Cofield's suggestion to portion half of the time to research as core work and the remaining half of the time to "Draft discovery" as non-core work is well taken.

22. The 1.50 total hours expended on February 2, 2009, was to "Finalize discovery; attend status conference." (Docket Entry # 58–1). Court appearances constitute core activity. Officer Cofield's suggestion to portion half of the time to the court appearance as core work and the remaining half of the time to "Finalize discovery" as non-core work is well taken.

23. Portions of the deposition were read to the jury.

eliminate half of the time because it combines multiple events into a single entry.[24] Surrounding billing entries elucidate that Attorney Murray reviewed Mercado's deposition transcript and plaintiff's medical records in anticipation of a meeting with plaintiff to discuss "strategy and status." (Docket Entry # 58–1). Conferring with plaintiff about strategy and explaining the implications of Mercado's deposition testimony is core work. Attorney Murray's failure to record each email does not warrant a reduction or a disallowance of the actual hours he expended.

▮ Officer Cofield's complaint that the September 28, 2009 entry ("[r]eview series of notices from court; re discovery") "inappropriately combines multiple 'notices from court' in one generic entry" (Docket Entry # 75–13) is misguided. An examination of the docket sheet shows that this court communicated twice that day with counsel. Although monitoring ordinarily constitutes core work, see Brewster v. Dukakis, 3 F.3d 488, 492 n. 4 (1st Cir.1993), reviewing the dates of discovery established in a court hearing a few days earlier is straight forward and clerical in nature. It is therefore properly classified as non-core work.

▮ Officer Cofield next complains about inadequate documentation for 4.00 hours of work Attorney Murillo performed on March 24, 2011. As set out in the billing entry and with trial set to commence in less than two weeks, Attorney Murillo researched, drafted and revised jury instructions; drafted a pretrial memorandum; reviewed photographs; emailed opposing counsel regarding exhibits; finalized voir dire questions and a verdict slip;

conferenced with plaintiff by telephone regarding witnesses; and corresponded by email with Attorney Murray regarding the pretrial memorandum and expert designations. A reduction of the time expended based on combining these tasks into a single entry of 4.00 hours without allotting a time period to each task is not appropriate. The majority of the tasks concern the same subject matter, to wit, working on the joint pretrial memorandum. In accordance with a Procedural Order, the joint pretrial memorandum necessarily included proposed voir dire questions, proposed jury instructions, a list of exhibits and designation of experts, if any.[25] (Docket Entry # 27).

▮ Officer Cofield also seeks to categorize a number of tasks in the foregoing March 24, 2011 entry as non-core. None of the tasks amount to non-core work particularly in light of the approaching trial. See Brewster v. Dukakis, 3 F.3d at 492 n. 4 (core work includes "legal research, writing of legal documents" and "monitoring"). The only non-core work consists of Attorney Murillo's additional entry to "attend to electronic filing of pretrial memo and pretrial submissions." The docket reflects that Attorney Murillo filed the joint pretrial memorandum and three other filings on March 24, 2011. Officer Cofield suggests this task took .39 hours. (Docket Entry # 74–13). This court agrees and categorizes it as non-core work.

Officer Cofield's next challenge based on inadequate documentation concerns Attorney Murillo's April 4, 2011 entry. The entry lists a series of tasks without assigning a specific time period to each task.

---

24. He also subtracts .10 hours before making these calculations. The subtraction, which Officer Cofield applies to all billing entries, is addressed elsewhere.

25. Officer Cofield's additional complaint that plaintiff is not entitled to fees for experts is unavailing with respect to this entry. The Procedural Order required information regarding experts.

The entry logs 7.50 hours of work for attending trial (including jury impanelment, opening statements and motions in limine), serving a subpoena on Wilkerson and conferring with a process server, conferring with Attorney Murray about plaintiff's direct examination and Mercado's deposition, drafting stipulations of dismissal as to the MCRA and malicious prosecution claims, reviewing the joint pretrial memorandum and emailing opposing counsel. Attorney Murillo spent a minimum of four hours in court inasmuch as the session began at 9:00 a.m. and ended at 12:58 p.m. The entry adequately accounts for the remaining 3.50 hours of work because it allows for a fair and informative assessment of efficiency and necessity. Attorney Murillo's work regarding serving the subpoena is not a complex task and warrants a non-core classification. The remaining tasks constitute core work. Half of the 3.50 hours (1.75) is therefore attributed to non-core work.[26]

The next category of entries is based on Officer Cofield's argument that challenges entries solely because all or part of the work is non-core. In accordance with the foregoing law, the following entries amount to non-core work: April 24, 2008;[27] April 30, 2008;[28] May 9, 2008; May 29, 2008; July 18, 2008 (first and third entries);[29] July 31, 2008; October 7, 2008; November 17, 2008; November 20, 2008; December 3, 2008; January 9, 2009; January 14, 2009; January 15, 2009; March 20, 2009; March 30, 2009; April 1, 2009; April 3, 2009 (second entry);[30] April 7, 2009;[31] April 15, 2009; April 16, 2009; April 17, 2009; April 22, 2009 (third entry); April 23, 2009 (first entry);[32] May 11, 2009; May 13, 2009; May 14, 2009; May 19, 2009; May 20, 2009; May 27, 2009; May 29, 2009; June 2, 2009; June 19, 2009; June 23, 2009; June 25, 2009; June 26, 2009 (second entry); June 30, 2009; July 1, 2009; July 14, 2009 (second entry);[33] July 24, 2009; July 27, 2009;[34] August 5, 2009 (second en-

26. Officer Cofield's overstaffing objection is addressed elsewhere.

27. Depending on the subject matter, telephone conferences may constitute core or non-core work. *See* fn. 28. The April 24, 2008 telephone conference with plaintiff involves the non-complex matter of the City's removal of the case from state to federal court.

28. Telephone conferences ordinarily reflect non-core work. *See Brewster v. Dukakis,* 3 F.3d at 492 n. 4 (depicting "telephone conversations" as "[n]on-core task"). When they involve strategy, negotiations with opposing counsel and legal judgments, such conferences fall into the core category.

29. The third entry involves core work (drafting the schedule) as well as non-core work (emailing opposing counsel). Examining other entries to ascertain the relative portion of the .30 hours spent on each task, this court finds that .10 hours is non-core work and .20 hours is core work.

30. The .20 hours expended to review the filing of the certification notice is reduced to .10 hours to reflect the amount of time reasonably spent on the task.

31. The .20 hours expended on writing the email (Docket Entry # 75–6) is reduced to .10 hours to reflect the amount of time reasonably spent on the task.

32. The .20 hours expended to review the filing notice of the joint motion is reduced to .10 hours to reflect the amount of time reasonably spent on the task.

33. The .20 hours expended on writing the email (Docket Entry # 75–7) is reduced to .10 hours to reflect the amount of time reasonably spent on the task.

34. The .50 hours of actual work includes a review of Mercado's deposition. She was a key witness because she observed a portion of the critical events. Such a review constitutes core work. Accordingly, .25 hours of work constitutes core work and .25 hours constitutes non-core work.

try);[35] August 6, 2009; August 10, 2009 (both entries);[36] August 12, 2009; August 13, 2009 (second entry);[37] August 17, 2009; August 18, 2009 (both entries); August 19, 2009 (second entry); September 9, 2009; September 11, 2009; September 23, 2009; October 8, 2009;[38] October 15, 2009 (both entries);[39] October 22, 2009; October 23, 2009; October 26, 2009 (first entry);[40] October 30, 2009 (both entries); November 6, 2009; November 19, 2009 (second entry); December 2, 2009 (second entry); December 29, 2009; January 15, 2010; January 20, 2010;[41] January 21, 2010; January 22, 2010; January 25, 2010; January 26, 2010; January 29, 2010;[42] February 8, 2010; February 9, 2010; March 29, 2010; April 14, 2010; April 15, 2010 (both entries); April 16, 2010; April 28, 2010; April 29, 2010;[43] May 24,

35. The .20 hours expended to review the deposition notice is reduced to .10 hours to reflect the amount of time reasonably spent on the task.

36. Officer Cofield sets out the first entry as an example of plaintiff's practice of unnecessarily adding six minutes to each billing entry. The first entry shows that Attorney Murray took .30 hours to prepare the email. (Docket Entry # 75–8). Because the email involved scheduling two depositions and producing documents in light of conflicts with Attorney Murray's other cases, the time expended is reasonable.

37. The .20 hours expended on writing the email (Docket Entry # 75–9) is reduced to .10 hours to reflect the amount of time reasonably spent on the task.

38. The entry reads as follows, "Review and prepare response to Request for Admissions; research; meeting with client." (Docket Entry # 58–1). Contrary to Officer Cofield's position, the reference to "research" is core work. *See Brewster v. Dukakis*, 3 F.3d at 492 n. 4 (core work includes "legal research"). The remaining tasks constitute non-core work although the nature of the task, i.e., preparing a response to a request for admission, implicates a significantly higher level of skill than the skill applicable to a secretarial or clerical task. The nature of the task however is addressed in determining the hourly rate applicable to non-core work. *See Hutchinson ex rel. Julien v. Patrick*, 636 F.3d at 16 (" '[r]easonable hourly rate will vary depending on the nature of the work' ") (brackets in original). At present, this court assigns a third of the time (.37) as core work and the remaining two thirds of the time (.73) as non-core work. Addressing a separate matter, Attorney Murray only spent 1.10 hours to review and to prepare the response to the request for admissions. No other billing entry during this time period reflects a continuation of this task. Such efficiency is one of numerous examples of the manner in which Attorney Murray litigated this case.

39. The .20 hours expended to review the deposition notice in the second October 15, 2009 entry is reduced to .10 hours to reflect the amount of time reasonably spent on the task.

40. The time Attorney Murray spent (.20 hours) to review the two notices from the court allowing two motions is reasonable.

41. Officer Cofield seeks to disallow entirely the .10 hours of time Attorney Murray spent on January 20, 2010, because the entry does not indicate the purpose of the email or the individual with whom Attorney Murray corresponded. The entry reads, "Email re: status." Surrounding entries provide the answer inasmuch as Attorney Murray primarily exchanged emails about "status" with plaintiff. The stated purpose of the email is to update plaintiff with the "status" of the case. Whether Attorney Murray was the sender or the recipient does not detract from Officer Cofield's ability to make a fair evaluation of the .10 hours Attorney Murray spent on the task.

42. Officer Cofield objects to compensating the .20 hours of time Attorney Murray spent on January 29, 2010, to review "Notice from court" because it duplicates the time he spent the previous day reviewing the notice. (Docket Entry # 74–13). This court finds the time excessive but prefers to disallow half as opposed to all of the time at issue.

43. The .20 hours expended to review the filing of the motion is reduced to .10 hours to

2010;[44] May 28, 2010; July 27, 2010; September 10, 2010 (both entries); November 2, 2010; November 2, 2010 (second entry);[45] November 4, 2010; November 5, 2010; January 11, 2011;[46] January 26, 2011; February 10, 2011; February 18, 2011; March 16, 2011; May 4, 2011 (both entries); May 9, 2011 (first entry);[47] May 9, 2011 (second entry);[48] May 12, 2011 (first entry);[49] May 12, 2011 (second entry); May 13, 2011 (first entry);[50] May 13, 2011 (second entry);[51] May 16, 2011 (first entry);[52] May 16, 2011 (second entry);[53] May 16, 2011 (third entry);[54] May 17, 2011 (first entry);[55] May 27, 2011;[56] May 31, 2011;[57] June 1, 2011;[58] June 6,

reflect the amount of time reasonably spent on the task.

44. Officer Cofield characterizes as "clearly excessive" the .50 hours of time Attorney Murray spent on May 24, 2010, to participate in the status conference by telephone and correspond by email with opposing counsel regarding Attorney Murray's inability to attend the conference. (Docket Entry # 75). Participating in the status conference is a court appearance and constitutes core work. Attributing .20 hours to the participation, Attorney Murray therefore spent the remaining time (.30 hours) corresponding with opposing counsel by email. Reviewing the emails (Docket Entry # 74–12), a reasonable time period for this remaining task is .20 hours. Accordingly, .20 hours is core work, .20 hours is non-core work and .10 hours is disallowed as excessive.

45. Officer Cofield seeks to reduce the .20 hours of time to review a notice of appearance to .10 hours. Inasmuch as Attorney Murray accomplished a similar task in .10 hours on June 26, 2009, the time period is reduced to .10 hours and compensated as non-core work.

46. The .20 hours expended to review the email (Docket Entry # 75–11) is reduced to .10 hours to reflect the amount of time reasonably spent on the task.

47. The entry reflects 1.70 hours of work by Abbi L. Maher ("Maher") to review briefs for citations and locate and print 48 cases. Officer Cofield submits that the work comprises both core and non-core work and is therefore divided into .85 hours of core work and .85 hours of non-core work. Maher, who is a member of Burns & Levinson's support staff, charges $100.00 for her work. The above tasks are typically performed by a paralegal. All of Maher's work is non-core and, in any event, a uniform hourly rate applies to her work as discussed in Roman numeral III.

48. As noted by Officer Cofield, the entry mixes core and non-core work. He suggests, and this court concurs, that half of 2.60 hours constitutes core work and half of the hours constitute non-cork work.

49. For reasons stated in the previous footnote, half of the 1.80 hours of work expended by Attorney Murillo is non-core work.

50. For reasons stated in footnote 48, half of the 1.40 hours expended by Attorney Murillo is non-core work.

51. As discussed in Roman numeral III, a single hourly rate of $225.00 applies to the work performed by Michael V. Samarel, Esq. ("Attorney Samarel").

52. As discussed in Roman numeral III, a single hourly rate of $100.00 applies to the work performed by Maher.

53. The entry includes core work (legal research) and non-core work (conferring with co-counsel). Half of the 2.40 hours is therefore designated as non-core work and half is designated as core work.

54. As discussed in Roman numeral III, a single hourly rate of $225.00 applies to the work performed by Samarel.

55. Adhering to Officer Cofield's suggestion, half of the .50 hours is core work and the other half is non-core work.

56. The entry for 4.00 hours of actual work includes core work (legal research and drafting oppositions) and non-core work (conferring with co-counsel). Accordingly, the first two core tasks comprise 2.66 hours and the third non-core task comprises 1.34 hours of the 4.00 hours.

57. As suggested by Officer Cofield, half of the 2.10 hours is core work and the other half is non-core work.

2011 (first entry);[59] June 7, 2011 (first entry);[60] June 8, 2011 (first entry); September 19, 2011; October 28, 2011; December 19, 2011 (second entry);[61] December 20, 2011;[62] January 9, 2012;[63] and February 7, 2012.

 In contrast, the following entries involving singular challenges on the basis of core versus non-core work reflect core work:[64] June 30, 2008;[65] July 18, 2008 (second entry);[66] October 10, 2008; October 21, 2008; November 21, 2008;[67] January 9, 2009; April 2, 2009;[68] April 3, 2009 (first entry); April 21, 2009; April 22, 2009 (first entry);[69] April 22, 2009 (first

**58.** Again, as suggested by Officer Cofield, half of the .20 hours is core work and the other half is non-core work.

**59.** Contrary to Officer Cofield's position, Maher's 1.50 hours to print out 37 cases for Attorney Murillo to review is not unnecessary or repetitive work. It also provides support for Attorney Murray's averment that, "The most junior person with the lowest hourly rate was utilized whenever possible." (Docket Entry # 78–2, ¶ 10).

**60.** Adhering to Officer Cofield's suggestion, half of the 2.00 hours is core work and the other half is non-core work.

**61.** The entry includes core work (reviewing legal issues regarding qualified immunity) and non-core work (reviewing the file in "preparation for status review"). (Docket Entry # 84–1). As suggested by Officer Cofield, half of the 2.00 hours is core work and the other half is non-core work.

**62.** Adhering to Officer Cofield's suggestion, half of the .20 hours is core work and the other half is non-core work.

**63.** The entry includes core work (legal research) and non-core work (file review). Half of the time is therefore compensated as core work and the other half is compensated as non-core work.

**64.** This group of entries includes a number of entries that Officer Cofield properly classifies as core work.

**65.** Reviewing the consent form constitutes core work because it entails weighing the ramifications of proceeding before the district judge or this court.

**66.** See fn. 19 and related text.

**67.** The work is a continuation as opposed to a duplication of the work performed on October 21, 2008. Officer Cofield's contention to the contrary lacks merit.

**68.** The entry reflects 1.50 hours of actual work. The subject matter of the entry reads, "Received motion for protective order; prepare for depositions." Officer Cofield objects to classifying the "motion for protective order" portion as core work. The entry states, "[r]eceived," as opposed to review. A separate entry dated April 16, 2009 states *"review motion for protective order."* (Docket Entry # 58–1) (emphasis added). As clarified by the latter entry, receiving the motion entails only a brief part of the 1.50 hours of work that day on the motion. This court attributes .10 hours of time to the receipt of the motion and classifies it as non-core work. The remaining time period involves preparing for Mercado's deposition. She was a key witness of the events. Preparing for her deposition entails anticipating the testimony and its legal import and strategizing how to elicit favorable testimony. As such, it constitutes core work. Attorney Murray's telephone conference a few days later more than likely involves discussing the deposition. Hence, it also constitutes core work. Similarly, reviewing Mercado's deposition on July 27 and September 8, 2009, is core work.

**69.** The 1.50 hours of actual work noted in this entry is to review Monteiro–Rogers' deposition, collect documents for review and production and confer by telephone with opposing counsel. Officer Cofield contends that only the document review and production constitute core work. Only a few witnesses observed part or all of the critical events at the police station. Monteiro–Rogers witnessed part of the events. Reviewing her deposition involves assessing the favorable and non-favorable portions and determining how to take advantage of the favorable portions and minimize the damage of the non-favorable portions. Engaging in such a review is core work. Only the telephone con-

entry); [70] April 23, 2009 (second entry); [71] June 1, 2009; [72] June 3, 2009; [73] June 29, 2009; [74] July 2, 2009; [75] July 14, 2009 (first entry); [76] July 15, 2009; [77] July 28, 2009; August 13, 2009 (first entry); [78] August 19, 2009; August 20, 2009; August 24, 2009; [79] August 25, 2009 (first entry); August 25, 2009 (second entry); [80] September 8, 2009; [81] September 10, 2009; [82] September

ference amounts to non-core work. Given the subject matter of the other portions of the entry, the telephone conference necessarily involved document production. Production was not complicated and therefore presumably entailed only a short conversation. This court thus finds .20 hours of non-core work and 1.30 hours of core work.

**70.** *See* the previous footnote.

**71.** The entry involves reviewing medical records and the confidentiality agreement. Separating the knee from the back injuries and determining what injuries warrant seeking relief from the jury in this case involves legal judgment properly classified as core work.

**72.** Reviewing the internal affairs department's interview of a key witness requires legal expertise and therefore constitutes core work.

**73.** This entry of one hour of actual work consists of reading a court notice and preparing for Mercado's deposition. Reading a court notice takes little, if any, time. The nature of this brevis task warrants attributing .10 hours of time to the work. Preparing for the deposition during the remaining time (.90 hours) constitutes core work.

**74.** The entry reflecting 1.10 hours of actual work is to review discovery production and email plaintiff regarding "status and strategy." Finding that Attorney Murray's review of discovery production under the circumstances involves his strategy, the majority of the entry amounts to core work. Updating plaintiff about the status of the case in the email is non-core work amounting to .20 hours of the 1.10 hours of actual time.

**75.** *See* the previous footnote.

**76.** The entry consists of reviewing Officer Cofield's discovery responses. Because he is a party and because the nature of the events in this case turns on credibility, Attorney Murray's review constitutes core work. It involves legal reasoning and deciphering the best strategy in light of the responses.

**77.** The .80 hours of work consists of non-core discovery work and core deposition work. Without an adequate basis to gauge the amount of time spent on each task, this court defers to Officer Cofield's position of dividing the time in half. Accordingly, .40 hours is non-core work and .40 hours is core work. Officer Cofield's additional suggestion to trim .10 hours of time from this entry and all of the other entries is addressed elsewhere in this opinion.

**78.** Conferring by telephone with plaintiff about "status and *strategy*" (Docket Entry # 58–1) is core work.

**79.** This entry includes non-core work (emailing plaintiff about discovery) and core work (preparing for Officer Cofield's deposition). Other entries during this time period show that Attorney Murray took either .20 hours or .30 hours to email plaintiff. This court therefore attributes .30 hours of the two hours of actual work to emailing plaintiff and the remainder of the time (1.70 hours) to preparing for the deposition.

**80.** The entry represents one hour of actual work and includes core work (reviewing documents and responses of Officer Cofield, the opposing party) and non-core work (emailing opposing counsel about discovery). Consistent with the amount of time Attorney Murray spent emailing opposing counsel during this period (.20 hours), this court attributes .20 hours as non-core work and .80 hours as core work.

**81.** The entry represents 1.50 hours of actual work and includes core work (reviewing Officer Cofield's internal affairs department report and Mercado's deposition) and non-core work (emailing opposing counsel about discovery). Attributing .20 of the time to emailing opposing counsel, the remaining time consists of 1.30 hours attributable to core work.

**82.** The entry represents one hour of actual work and includes core work (reviewing

17, 2009;[83] September 18, 2009;[84] September 29, 2009;[85] November 5, 2009;[86] November 17, 2009;[87] November 19, 2009 (first entry);[88] November 30, 2009;[89] December 2, 2009 (first entry);[90] December 15, 2009;[91] January 11, 2010; January 12, 2010; January 19, 2010;[92] January 27, 2010;[93] January 28, 2010;[94] February 4,

plaintiff's deposition) and non-core work (emailing plaintiff). The former work is core work because plaintiff is a party and because the nature of the events in this case turns on credibility. Consistent with the amount of time Attorney Murray attributed to emailing plaintiff in single entries during this time period, this court attributes .20 hours as non-core work and .80 hours as core work.

83. *See* fn. 60 & 71.

84. *See* fn. 67.

85. The entry represents one hour of actual work and includes core work ("[r]eview deposition") and a more routine discovery matter amounting to non-core work (document production). Accordingly, this court attributes .50 hours as non-core work and .50 hours as core work.

86. The entry consists of a "file review," a telephone conference with plaintiff regarding "strategy" for "upcoming depositions" and emailing "opposing counsel re: deposition." Only the strategy entry is core work. Thus, .13 hours is attributable to core work and the remaining .27 hours is attributable to non-core work.

87. Attendance at the status conference is core work. The one hour entry, which also refers to "notice in from court re: scheduling," necessarily includes travel time because the conference did not last one hour and a review of a notice from this court does not take any longer than .10 hours. Officer Cofield's request to eliminate half of the time because of a failure to assign a time period for each task lacks merit. His counsel attended the conference and therefore has a basis to ascertain the amount of time spent at the conference as well as to evaluate the efficiency and necessity for the time expended. Reviewing the entry, .25 hours is attributable to core work and the remaining time (.75) is attributed to non-core travel time and reviewing a court notice.

88. This entry reflects emails with plaintiff regarding "strategy" with respect to medical bills. Corresponding with a client about strategy involves legal judgment about the relevance and the strength of the medical evidence as well the time expended to present the evidence to the jury. As such it constitutes core work. *See* fn. 37.

89. *See* fn. 60 & 67.

90. *See* fn. 60.

91. This entry as well as the January 11 and 12, 2010 entries involve communications between Attorney Murray and plaintiff about "strategy." As such, they are properly classified as core work.

92. As previously explained, reviewing medical records constitutes core work. *See* fn. 60. The only other entry on this date is to "E-mail client." On May 29 and August 17, 2009, it took Attorney Murray .20 hours to email plaintiff. The same time period therefore applies to the similar task he performed on January 19, 2010.

93. The entry refers to "redact[ing] medical records" and therefore involves an assessment of the confidentiality and the relevance of material. The skill to perform the task involves exercising legal judgment and therefore constitutes core work.

94. Contrary to Officer Cofield's position, redacting medical records is core work. The additional time reflected in the entry is to appear in court (core work), email plaintiff (non-core work) and review this court's January 28, 2010 entry containing discovery deadlines (non-core work). Although Attorney Murray did not assign a time to each entry, Officer Cofield's assertion that .60 hours of work to review the notice is excessive is not well taken. The entry permits a fair evaluation of the time expended on each task. The status conference lasted .10 hours and constitutes core work. On June 26, 2009, it took Attorney Murray .10 hours to review a similar court notice. On May 29 and August 17, 2009, it took Attorney Murray .20 hours to email plaintiff about similar matters. The same time periods therefore apply to the same tasks he performed on January 28, 2010. The

2010; February 10, 2010; February 18, 2010; March 5, 2010;[95] March 17, 2010;[96] March 18, 2010;[97] March 30, 2010;[98] March 31, 2010; April 1, 2010;[99] August 5, 2010; March 18, 2011 (first entry);[100] March 18, 2011 (second entry); March 19, 2011; March 21, 2011;[101] March 22, 2011;[102] March 23, 2011;[103] March 25, 2011;[104] March 28, 2011 (first entry);[105] March 28, 2011 (second entry); March 29, 2011; March 30, 2011 (first entry);[106] March 30, 2011 (second and third entries); March 31, 2011 (first entry);[107] March 31, 2011 (second entry); April 1, 2011;[108] April 2, 2011; April 3, 2011 (first entry);[109] April 3, 2011 (second entry); April 4, 2011 (second entry); April 5, 2011 (second entry); April 6, 2011 (both entries); April 7, 2011 (second entry);[110] May 5, 2011; May 6, 2011;[111] May 10, 2011; May 11, 2011;

remaining time to review and redact medical records (.80 hours) is core work.

95. This entry consists of Attorney Murray's review of the "children's depositions." (Docket Entry # 58–1). The February 18, 2010 entry reveals that he "attend[ed] deposition of children" on that day. The children's testimony was significant because they spent the majority of the day with plaintiff and were inside the police station during the initial part of the dispute between plaintiff and Officer Cofield. Deposition preparation as well as attendance constitutes core work. Hence, the time Attorney Murray spent on February 4, 10 and 18, 2009, and on March 5, 2010 is core work.

96. *See* fn. 60.

97. *See* fn. 60.

98. *See* fn. 83.

99. *See* fn. 60. Officer Cofield objects to the entry on the basis that it constitutes non-core work. Only the referenced email is non-core and, based on similar time entries, took .20 hours of work.

100. As explained in reference to Attorney Murillo's similar work on March 24, 2011, the tasks do not constitute non-core work particularly in light of the approaching trial. As discussed below, however, half of the time is excluded because it relates to reviewing a court order allowing an extension of time due to Attorney Murray's vacation.

101. *See* the previous footnote.

102. The nature of the task reflects core work particularly in light of the approaching trial.

103. *See* fn. 91.

104. *See* fn. 91.

105. *See* fn. 91.

106. *See* fn. 91.

107. Conferring with co-counsel about the matters identified in the email is core work.

108. *See* fn. 91.

109. *See* fn. 91.

110. The entry reads, "Jury trial Day 4; verdict." (Docket Entry # 58–1). Officer Cofield characterizes the 8.60 hours of work as non-core. (Docket Entry # 74–13). Court convened at 9:00 a.m. with testimony of the final witness. Counsel gave closing arguments and, after discussing substantive issues regarding the jury charge with counsel, this court charged the jury. "[C]ourt appearances" constitutes core work. *Brewster v. Dukakis*, 3 F.3d at 492 n. 4. The proceedings suspended at 12:30 p.m. and reconvened at 3:30 p.m. for approximately ten minutes. Proceedings reconvened again at 4:00 p.m. with a second note from the jury and suspended at 4:10 p.m. This court held a brief session from 4:25 p.m. to 4:30 p.m. The jury came back with a note at 4:50 p.m. indicating it had a verdict. Attending court to hear the verdict is core work particularly in light of the complicated ramifications of the answers in the verdict form. Accordingly, four hours constitute core work and the remaining time (4.60 hours) constitutes non-core work. The same division applies to Attorney Murillo's 8.50 hours of work on the same day. Thus, 4.0 hours is core work and the remaining time is non-core work.

111. Officer Cofield objects to the total amount of time Attorney Murillo spent to research

May 17, 2011 (second entry); May 18, 2011; May 19, 2011; May 20, 2011; May 23, 2011; May 26, 2011; June 6, 2011 (second entry); June 7, 2011 (second entry); June 8, 2011 (second entry); December 8, 2011; [112] December 9, 2011 (first entry); [113] December 9, 2011 (second entry); December 19, 2011 (first entry); [114] January 4, 2012; [115] January 5, 2012; January 6, 2012; January 11, 2012; [116] January 12, 2012; [117] January 13, 2012 (both entries); January 18, 2012; January 19, 2012 (first entry); [118] January 19, 2012 (second entry); January 20, 2012; [119] January 25, 2012; and January 30, 2012.[120]

B. *Necessity, Excessiveness and Interrelated Claims*

As noted above, a court may subtract from the actual hours time spent on work that is "duplicative, unproductive, excessive, or otherwise unnecessary." *Grendel's Den, Inc. v. Larkin*, 749 F.2d at 950. Likewise, a court may "remove time that was unreasonably, unnecessarily or inefficiently devoted to the case." *De Jesus Nazario v. Morris Rodriguez*, 554 F.3d at 207. Within this legal framework, Officer Cofield seeks to disallow hours spent: to serve the City; to work on the abandoned claims against the City and the malicious prosecution claim against Officer Cofield; to work on opposing the CORI motion; to research prejudgment interest; to retain a medical expert; to seek a continuance of

and draft the oppositions to the two post trial motions as excessive. (Docket Entry # 79, § II(d)). The oppositions, while short, touched on a number of important issues which, upon further development by this court, led to upholding the award. In light of the vigorous, thorough and extensive briefs filed by Officer Cofield and his strong and steadfast challenge to the award, Attorney Murillo's hours are not excessive. *See Gay Officers Action League v. Puerto Rico*, 247 F.3d at 298; *Lipsett v. Blanco*, 975 F.2d at 941.

112. Attorney Murillo's 1.90 hours of work on December 8, 2011, to review this court's 105 page Memorandum and Order and then confer with Attorney Murray about the decision is core work. It entails legal reasoning and analysis.

113. The entry reflects that Attorney Murillo conferred with Attorney Murray for .40 hours about the Memorandum and Order and what next steps to take in the case involves strategy and legal reasoning. As such, it is core work. The same reasoning applies to Attorney Murray's .40 hours of work on December 9, 2011.

114. Contrary to Officer Cofield's position, reviewing and analyzing the qualified immunity issue in this case is core work. The work requires a legal analysis of the issue in light of the verdict form. The combined the section

1983 false arrest and excessive force claims in the verdict form rendered the issue relatively complex. Attorney Murray states by affidavit that he used the most junior person with the lowest hourly rate which "included [the] use of Attorney Murillo to research and brief, in the first instance, our responsive papers" to the immunity issue. In preparing for oral argument, Attorney Murray "worked closely" with Attorney Murillo. Hence, her time is compensable even though she did not attend the hearing. The 1.30 hours is therefore core work.

115. The 1.90 hours of work is properly characterized as core work. *See* fn. 112–114.

116. The 2.90 hours of work is properly characterized as core work. *See* fn. 112–114.

117. The 3.20 hours of work is properly characterized as core work. *See* fn. 112–114.

118. The 1.50 hours of work is properly characterized as core work. *See* fn. 112–114.

119. Attorney Murillo's time spent conferring with Attorney Murray about the complex issue identified in the entry is core work.

120. Attorney Murillo's time spent conferring with Attorney Murray about this legal issue is core work.

the final pretrial conference because of Attorney Murray's vacation; and to staff a second attorney (Attorney Murillo) to prepare and to attend trial. Officer Cofield also maintains that plaintiff's counsel consistently added six minutes to every task. As a result, Officer Cofield seeks to reduce each of the entries by .10 hours.

■ Addressing the arguments seriatim, Officer Cofield asserts that the time spent to draft the motion to extend the time to serve the City and Officer Cofield was not necessary. (Docket Entry # 75, § III(c)). Seeking an extension of time to serve process is necessary to avoid a default and appointing a special process server is an assessment of the legal necessity for this kind of service in a case against a municipality and an individual. The delay in attempting service until a few days before the 90 day period expired,[121] however, is attributable to plaintiff's failure to attempt service in a more timely manner. Time spent drafting, filing and arguing the motion for extension of time is therefore not necessary work. The motion to appoint a special process server filed at the same time was necessary irrespective of the delay in accomplishing service. Half of the time expended to draft the motions on February 25, 2008, is therefore eliminated and the remaining time (.15 hours) classified as core work.

With respect to the February 26, 2008 entry, arguing the motion for an extension of time took no more than .20 hours. This time is therefore eliminated from the February 26, 2008 one hour of actual work as unnecessary. Officer Cofield further argues that the 1.30 hours of time spent researching service on February 28 and 29, 2008, is excessive. The appointment of a special process server is not straight forward. Contrary to Officer Cofield's position, researching the issue after the court allows an extension is necessary because service was not yet accomplished. The actual time spent on February 28 and 29, 2008, as well as on April 18, 2008, is neither excessive nor unnecessary. It is also properly billed as core work. *See* fn. 18; *Brewster v. Dukakis,* 3 F.3d at 492 n. 4 (core work includes "legal research").

■ Turning to the abandoned claims against the City, a plaintiff "generally may not recover attorneys' fees on unsuccessful claims." *Trainor v. HEI Hospitality, LLC,* 699 F.3d 19, 35 (1st Cir.2012); *Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In addition to claims rejected by the jury or the court, unsuccessful claims include those claims voluntarily dismissed by the plaintiff. *See Diaz v. Jiten Hotel Management, Inc.,* 704 F.3d 150, 152 (1st Cir.2012) (affirming fee reduction where the plaintiff voluntarily dismissed wrongful termination and defamation claims, court allowed summary judgment on other claims and Diaz therefore "prevailed on only one of the six claims" raised in complaint). In calculating the number of hours, a court may therefore exclude "fees for unsuccessful claims not *interconnected* with the successful claim." *Burke v. McDonald,* 572 F.3d at 63 (emphasis added); *De Jesus Nazario v. Morris Rodriguez,* 554 F.3d at 207 ("subject to principles of interconnectedness, the trial court may disallow time spent litigating failed claims"). Eliminating hours spent on unsuccessful claims does not apply "where both the successful and unsuccessful claims arose from the same common core of facts or were based on related legal theories." *Bogan v. City of Boston,* 489 F.3d 417, 428 (1st Cir.2007); *accord Diaz v. Jiten Hotel Management, Inc.,* 704 F.3d

---

**121.** *See* fn. 3 and related text.

at 153 (Supreme Court directs "courts to consider whether the unsuccessful claims were unrelated, or whether they were instead based on a 'common core of facts' or 'related legal theories'") (quoting *Hensley v. Eckerhart,* 461 U.S. at 435, 103 S.Ct. 1933). In other words, "where the plaintiff fails to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley v. Eckerhart,* 461 U.S. at 440, 103 S.Ct. 1933.

■■■ Examining the abandoned claims against the City, the claims are not interrelated factually or legally with respect to the negligent training and supervision claim against the City (Count VIII) and, to a slightly lesser degree, the *Monell*[122] claim against the City based on an alleged policy or custom in the use of excessive force and engaging in arrests without probable cause (Count I). The facts to support these claims rest on legal theories regarding training, supervision, policies and customs. They also do not emanate from the same facts of what took place between plaintiff and Officer Cofield on December 5, 2004 at the area B–2 police station. Moreover, they involve different defendants.

■■■ In contrast, the successful section 1983 false arrest claim and the unsuccessful section 1983 excessive force claim, if any, along with the unsuccessful state law claims tried to the jury are based on the common core of facts that took place at the area B–2 police station. The common and overlapping facts of the arrest and the purported use of excessive force occurred within the space of 30 minutes at the same location involving the same two individuals.

*See Anderson v. City of New York,* 132 F.Supp.2d 239, 244 (S.D.N.Y.2001) (unsuccessful claims of search of car with Cedric Anderson's successful claim for unsuccessful claim for use of excessive force after stopping car " 'involved a common core of facts'" with successful illegal search claim).

Turning to the remaining abandoned claims, the malicious prosecution claim stems from these same facts which then lead to the dismissal of the charges for want of prosecution. The unsuccessful MCRA claim also arises from the common core of facts that took place at the police station. The interference with plaintiff's constitutional right to be free from an unlawful seizure of his person occurred at the station and factually overlaps with the successful section 1983 false arrest claim. The unsuccessful negligence claim (Count VII) stems from the City and Officer Cofield "detaining, questioning, and arresting Plaintiff, and properly providing medical attention for Plaintiff once in custody." (Docket Entry # 47–1, ¶ 46). It therefore arises from the same facts that provide the basis of the successful section 1983 false arrest claim. Furthermore, the custody occurred because of the false arrest and ended within hours of the arrest. Similarly, the unsuccessful negligent infliction of emotional distress claim against Officer Cofield concerns "the vicious attacks and serious injuries inflicted by [Officer Cofield] upon Plaintiff." (Docket Entry # 47–1, ¶ 43). The unconstitutional arrest took place at the same time or within minutes of Officer Cofield's alleged attack. The two claims concern the same two individuals at the same location. The claims therefore arise from the same common core of facts.

**122.** *Monell v. New York Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Applying these conclusions to the entries at issue, only the following entries are for fees involving the unsuccessful claims that are not interconnected with the successful section 1983 false arrest claim: June 26, 2009 (third entry); October 19, 2009; October 20, 2009; October 26, 2009 (second entry); March 29, 2010; April 22, 2010; June 1, 2010; and July 15, 2010. These entries total 7.30 hours of work performed by Attorney Murray. The entries reflect work performed on discovery issues involving only the City. While they may include work on the interrelated MCRA and negligence claims against the City, they also include work on the unrelated and unsuccessful claims against the City. In this court's discretion and because the time does include work on interrelated claims, half of the 7.30 hours (3.65 hours) is excluded from the fee calculation. The remaining, compensable time constitutes non-core work.

In a related argument, Officer Cofield submits that Attorney Murray's statements at the May 24, 2010 status conference mandate elimination of all the remaining time he spent thereafter on the dismissed claims against the City. Attorney Murray's statement at the May 24, 2010 conference was equivocal. The work at issue, however, concerns only the claims against the City. These claims included the unsuccessful and unrelated claims against the City as well as the interrelated claims against the City. Thus, like the work performed only against the City on discovery matters, the same reasoning applies to exclude half of the work on these City claims. The following entries fall into this category: December 9, 2010 (all three entries); December 10, 2010; December 21, 2010; January 31, 2011 (second entry); and February 11, 2011. Except for the legal research performed on December 9, 2010

(third entry), thee tasks are all non-core work.

 Officer Cofield next contends that Attorney Murray's work in opposing the CORI motion was "futile and improvident." (Docket Entry # 75, § III(e)). It is true that Attorney Murray did not have a strong legal position. The work was nonetheless reasonable and, in light of the damaging information in a case that turns upon plaintiff's credibility, necessary advocacy on behalf of his client. None of the hours are subject to reduction. Reviewing the entries at issue, Officer Cofield correctly distinguishes between the core and non-core work in each entry. The following entries reflect non-core work: January 13, 2011; January 25, 2011; January 26, 2011; and February 1, 2011. The following entries represent core work: January 24, 2011; January 28, 2011; and January 31, 2011 (first entry).

Officer Cofield also objects to compensating the time spent reviewing case law concerning prejudgment interest and conferring with co-counsel.[123] Attorney Murillo's review of prejudgment interest case law on April 8, 2011, was necessary to respond to this court's April 7, 2011 discussion and inquiry about prejudgment interest. The time (1.10 hours on April 8, 2011) is therefore reasonable as well as necessary. The .30 hours of work performed by Attorney Murray on the same day to "review case law re: internet issues" is not necessary inasmuch as the issue is not related to any viable issue in this case at that time. Accordingly, the time is excluded.

As to the expert related work, Officer Cofield reasons that plaintiff's delay in disclosing an expert and his eventual decision not to present an expert to testify about

123. *See* fn. 12 and related text.

the causal relationship between the incident and his knee and back injuries caused Officer Cofield and the City to expend resources hiring an expert.[124] They submit that Attorney Murray's fees for reviewing their expert report and performing other expert related work are not recoverable because of an abandoned damages theory, plaintiff's intent not to call an expert and the unsuccessful section 1983 excessive force and battery claims. Officer Cofield contends that the work "relates to an unused expert" concerning the "claim of ongoing knee and back injuries . . . related to his unsuccessful claim of excessive force." (Docket Entry # 74–13).

The argument that the work concerns the unsuccessful section 1983 excessive force or battery claims, while likely true, does not support eliminating the hours. As previously explained, the unsuccessful section 1983 excessive force and the successful section 1983 false arrest claim are interrelated.

The fact that on March 30, 2011, Attorney Murray told Officer Cofield's counsel that plaintiff would not pursue the theory that the "knee and back injuries were causally related to the incident" (Docket Entry # 74–4) also fails to justify eliminating the hours. During trial, this court admitted certain medical records. Plaintiff testified about falling on his knee, hurting his back and walking in a hobbled manner immediately after the incident. After the incident, plaintiff testified that his knee "swelled up on me so bad" and "was really fat." (Docket Entry # 48, p. 40). Without objection, the jury charge allowed the jury to award past and future medical expenses as well as damages for physical pain. Any misunderstanding based on the March 30, 2011 conversation was rectified at trial.

In any event and more to the point, the work was necessary and reasonable. Although Officer Cofield objects to Attorney Murray reviewing defendants' expert disclosure and thereafter conferring with a physician, the work is reasonable and necessary and the time spent not excessive. The relationship between the knee and the back injuries as well as plaintiff's pre-existing back injuries presented a relatively complex injury profile thus justifying the time expended. Reviewing the disputed entries, the following is compensated as non-core work: June 15, 2010; June 29, 2010; August 23, 2010;[125] August 24, 2010; August 25, 2010; October 20, 2010; November 2, 2010 (first entry); November 3, 2010;[126] November 22, 2010; November 30, 2010; and December 3, 2010.

Turning to the work seeking a continuance because of Attorney Murray's prepaid vacation, it entailed seeking and obtaining an extension of the March 24, 2011 final pretrial because of Attorney Murray's vacation the week of March 21, 2011.[127] Courts engage in a "case-by-case analysis of attorney fee requests for time spent filing and reviewing motions for extension of time, looking closely at the circumstances of each request." *Holmes v. Astrue*, 2010 WL 3220085, *2 (D.S.C. Aug. 12, 2010). Because a personal reason provides the foundation for the work in seek-

---

124. *See* fn. 4 and related text. Plaintiff's decision of whether to present expert testimony was partly financial.

125. The .20 hours expended *to review the email* (Docket Entry # 75–10) is reduced to .10 hours to reflect the amount of time reasonably *spent on the task.*

126. As suggested by Officer Cofield, two thirds of the 2.00 hours reflected in this entry is non-core work. The remaining .67 hours to appear in court constitute core work.

127. *See* fn. 10 and related text.

ing and obtaining the requested extension, the work is unnecessary. Compensation for the March 16 and 17, 2011 entries is denied. The first March 18, 2011 entry includes both unnecessary work reviewing the order allowing the motion for the extension and necessary work reviewing the pretrial order, supplemental disclosures and conferring with co-counsel. Half of the time (.25 hours) is therefore compensable and, in light of the approaching trial, reflects core work. *See* fn. 72.

### C. *Staffing and Incremental Billing*

According to Officer Cofield, Attorney Murillo played only a limited, inactive role at trial. He therefore seeks a 50% reduction in the hours she spent to attend the trial.

■ Hours for work that duplicates or mimics another lawyer's hours when the record fails to reflect a legitimate need for a second attorney are subject to disallowance. *See U.S. v. One Star Class Sloop Sailboat Built in 1930 with Hull No. 721, Named Flash II*, 546 F.3d 26, 44 (1st Cir.2008) (noting "familiar problem" of overstaffing in cases involving prospect of fee shifting and that "Goldberg's work, taken at face value, appears to mimic portions of Grantland's work" with "absolutely nothing in the record" to suggest "a legitimate need for a second attorney"); *Wennik v. Polygram Group Distribution, Inc.*, 304 F.3d 123, 134 (1st Cir.2002) (" 'the time for two or three lawyers in a courtroom or conference, when one would do, "may obviously be discounted" ' ") (quoting *Hart v. Bourque*, 798 F.2d 519, 523 (1st Cir.1986), in parenthetical). Although the complexity of modern litigation may reasonably necessitate "the deployment of multiple attorneys," a "court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." *Gay*

*Officers Action League v. Puerto Rico*, 247 F.3d at 297.

■ The circumstances fully warrant the use of Attorney Murillo to assist Attorney Murray during the trial. It is true that she did not examine any of the witnesses or argue any of the objections at side bar. Attorney Murray examined all of the witnesses and presented the opening statement and the closing argument. Throughout trial, however, this court personally observed Attorney Murray regularly consult with Attorney Murillo at counsel table. Attorney Murray attests that he worked closely with Attorney Murillo both "[i]n preparation for and at trial" and carefully divided the work. (Docket Entry # 58, ¶ 7). Time records reflect that she drafted the pretrial memorandum, conferred with Attorney Murray about trial strategy, drafted and revised jury instructions, prepared responses to anticipated admission of plaintiff's prior arrests, researched case law, reviewed exhibits and Mercado's proposed deposition and performed other necessary tasks. The knowledge she gained through this work made her attendance at trial all the more valuable to Attorney Murray. Her presence at trial was necessary and reasonable to assist Attorney Murray and counter the vigorous defense mounted by Officer Cofield and his two attorneys. *See Gay Officers Action League v. Puerto Rico*, 247 F.3d at 298 ("ferocity of the Commonwealth's defense" undermines "assertion that the plaintiffs did not need to call up the reserves" to litigate the issue). Attorney Murillo's attendance is also considered core work. *See Brewster v. Dukakis*, 3 F.3d at 492 n. 4.

As a final matter, Officer Cofield objects to plaintiff's incremental billing practices. He requests a .10 hour reduction in each billing entry because of plaintiff's consistent pattern of adding at least six minutes

(.10 hours) to each task. He identifies the following entries as exemplifying the practice: July 21, 2008;[128] April 3, 2009 (second entry); April 7, 2009; April 23, 2009 (first entry); July 13, 2009;[129] August 5, 2009 (second entry); August 10, 2009; August 13, 2009; October 15, 2009 (second entry); October 26, 2009; November 11, 2009;[130] January 29, 2010; April 29, 2010; May 24, 2010; August 23, 2010; and January 11, 2011.

This court has already adjusted downward the actual hours expended in the majority of these entries. A number of the entries, however, did not result in a reduction thus limiting the strength of Officer's Cofield's argument. Having reviewed each of the entries and all of the other entries, this court does not find a pattern of overbilling. Where appropriate, this court reduced the actual hours expended to reflect a reasonable time for the task.

Overall, Attorney Murray efficiently litigated this case in response to a firm, steadfast and vigorous defense presented by Officer Cofield and his attorneys. Indeed, he performed a wide variety of pretrial services in an expeditious and efficient manner. *See De Jesus Nazario v. Morris Rodriguez*, 554 F.3d at 208 (discussing 1991 case where "the plaintiff's attorney performed a veritable smorgasbord of pre-trial services, which were worthy of some significant compensation").

 Furthermore, in reviewing the time records prior to submission, Attorney Murray omitted time "that might be considered redundant or duplicative." (Dock-

et Entry # 58, ¶ 8). He also excised time spent by support staff and time not directly related to litigating the case. (Docket Entry # 58, ¶ 8). Such "self-pruning" confirms that the vast majority of the hours expended are reasonable, necessary and neither excessive nor duplicative. *See Hutchinson ex rel. Julien v. Patrick*, 636 F.3d at 15 (district court "understandably gave considerable weight" to the plaintiffs' "self-pruning" of "discounting total number of hours before compiling their fee request"). A global reduction of .10 hours for each entry is not appropriate.

## II. *Hourly Rates*

 To determine a reasonable hourly rate, the court "applies the prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved.)" *Gay Officers Action League v. Puerto Rico*, 247 F.3d at 295; *see Grendel's Den, Inc. v. Larkin*, 749 F.2d at 951 (determination of hourly rate considers "such factors as the type of work performed, who performed it, the expertise that it required, and when it was undertaken"). Ordinarily, in determining a reasonable hourly rate, the starting point is the prevailing market rate in the relevant community. *Andrade v. Jamestown Housing Authority*, 82 F.3d 1179, 1190 (1st Cir.1996). Boston therefore provides the relevant community to ascertain and compare the prevailing hourly rates. *See, e.g., Stokes v. Saga International Holidays, Ltd.*, 376 F.Supp.2d 86, 92 (D.Mass.2005).

---

128. There is no July 21, 2008 entry. This court assumes Officer Cofield intended to refer to the July 18, 2008 entry.

129. Officer Cofield refers and quotes the email that forms the basis for the .20 hours of work. The July 13, 2009 entry does not reflect email work. This court assumes Officer

Cofield intended to refer to the second July 14, 2009 entry.

130. There is no November 11, 2009 entry. This court assumes Officer Cofield intended to refer to the May 11, 2009 entry.

The prevailing market rate in a community is the rate charged "'for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Andrade v. Jamestown Housing Authority*, 82 F.3d at 1190 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). Reasonable hourly rates "vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d at 16.

■ By affidavit, Attorney Murray provides the necessary support for his hourly rate as well as Attorney Murillo's hourly rate. He also supplies, again by affidavit, the applicable rate for the 2.80 hours of work performed by Attorney Samarel, a junior associate at Burns & Levinson LLP, and for 3.30 hours of work performed by Maher, a member of the support staff at Burns & Levinson LLP.

Attorney Murray's hourly rate is presently $450.00. As a partner at the firm, his hourly rate was $450.00 in 2011, $440.00 in 2010, $435.00 in 2009, $425.00 in 2008, and $395.00 in December 2007 when he drafted the complaint.[131] As set forth in Attorney Murray's affidavits, because Burns & Levinson LLP charges competitive rates *lower* than the rates typically charged for attorneys with comparable experience, Attorney Murray's hourly rate in a competitive marketplace is $500.00 or more. (Docket Entry # 58, ¶ 10) (Docket Entry # 78–2, ¶ 13) (Docket Entry # 84, ¶ 12).

Attorney Murray joined Burns & Levinson LLP in 2001. Before working at Burns & Levison LLP, he was an associate at another area law firm working in the litigation department. He has been trying federal and state cases for 18 years. As set forth by affidavit, since at least 1994, he has been involved in civil rights litigation. In contrast, Officer Cofield accurately points out that the firm's website describes his practice as business litigation, ERISA litigation, white collar crime and employment law without referencing civil rights. The court's PACER website also reveals his involvement in only five civil rights cases, according to Officer Cofield. Taking these facts into account, Attorney Murray nevertheless exhibited a solid expertise in the area of civil rights and, more specifically, unreasonable seizures under the Fourth Amendment.

By affidavit, Attorney Murray, who is familiar with the billing rates in Boston, also attests that the rates are appropriate and well within a reasonable range. He grounds this opinion on his training and experience. (Docket Entry # 58, ¶¶ 9 & 10). As such, it provides a useful guide of the market value of the services. *See Hutchinson ex rel. Julien v. Patrick*, 636 F.3d at 16 (rate "a private lawyer actually charges to clients in the ordinary course of his practice, though not conclusive, is a useful indicator of market value"). Although at the high end, these rates correspond with the hourly rate awarded in a section 1983 civil rights case to a Boston attorney with more experience but not necessarily more skill than the skill displayed by Attorney Murray in this action. *See Ferraro v. Kelley*, 2011 WL 576074, *4 (D.Mass. Feb. 8, 2011) (awarding $350.00 hour rate).[132]

---

**131.** In arriving at the requested fee award, Attorney Murray applied the applicable annual rate to the year in which he performed the service.

**132.** The court in *Ferraro* also noted that before reestablishing his own practice in 2009, the attorney worked at Denner Pellegrino, LLP, and charged an hourly rate was $450.00. *Id.*

In litigating this case, Attorney Murray exhibited an efficiency and expertise in presenting plaintiff's position. His writing was precise and succinct even in response to extensive briefing and admirable advocacy on the part of Officer Cofield's attorneys. *See Gay Officers Action League v. Puerto Rico*, 247 F.3d at 295 (court may consider "specialized competence of the attorneys involved") (parenthesis omitted).

██ Because rates necessarily vary depending on "the nature of the work," *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d at 16, the "core" work performed by Attorney Murray warrants a higher rate than his non-core work. His core work consisted of appearing in court, writing legal briefs and conducting depositions. In light of all of the above circumstances, the annual rates Attorney Murray proposes are appropriate and reasonable for his core work.[133] Attorney Murray's non-core work entailed a significant amount of discovery work as opposed to simple secretarial or clerical tasks. Whereas non-core work is, at times, compensated at two thirds the rate of core work, as suggested by Officer Cofield, a more appropriate rate is a modest reduction of $50.00 to the respective annual rates.

Attorney Murillo's hourly rate is $315.00 for 2011 and $325.00 for 2012. Attorney Murray's affidavits explain that these rates are either lower than or "comparable to the hourly rates typically charged by attorneys" with her level of experience. (Docket Entry # 78–2). He is familiar with the hourly rates in and around Boston including civil rights litigation of the kind at issue in this case, as set forth by affidavit. (Docket Entry ## 58, 78–2 & 84). A member of the Massachusetts bar since 2004, she is a seventh year associate at Burns & Levinson LLP. Since at least 2006, she has been involved in employment discrimination law in a litigation context. Officer Cofield correctly notes that the firm's website describes her practice as focusing on business litigation, employment litigation and condominium law as opposed to civil rights. The same website also shows Attorney Murillo's designations in an annual list published by *Boston Magazine* of Massachusetts Rising Stars from 2008 to 2011.

The nature of the work she performed was to assist Attorney Murray in preparing for trial and during trial. It included appearing in court and providing meaningful assistance to Attorney Murray. Her legal research involved significant issues such as jury instructions, post trial motions in the context of strongly contested issues and qualified immunity. She did not assume the role of a less experienced associate performing less complex tasks. *See Bogan v. City of Boston*, 489 F.3d at 429. In this court's discretion and finding these rates comparable to rates in the Boston community, Attorney Murillo's core work warrants the reasonable rates she requests.[134] The nature of the non-core work she performed warrants only a slight reduction of $50.00 in the annual rates requested. Case law in this district supports a fee falling within this range. *See Tri–City Community Action Program,*

---

133. In arriving at this conclusion, this court has considered the cases cited by Officer Cofield depicting lower hourly rates as well as a case reflecting higher hourly rates. While relevant, other cases do not necessarily reflect the particular circumstances of this case. *See generally Hutchinson ex rel. Julien v. Patrick*, 636 F.3d at 17.

134. Officer Cofield's reliance on *Parker v. Town of Swansea*, 310 F.Supp.2d 376, 389 (D.Mass.2004), as setting out a slightly higher rate of $240.00 in 2004 for a civil rights attorney with 30 years experience is misplaced. The court in *Parker* was describing a 1999 case in which this civil rights attorney obtained a rate of $240.00. *Id.*

*Inc. v. City of Malden,* 680 F.Supp.2d 306, 315–16 (D.Mass.2010) (approving $275.00 hourly rate for ninth year associate).

Attorney Samarel's hourly rate is $225.00 for the work he performed in 2011. He was two years out of law school at that time and an associate at Burns & Levinson LLP. By affidavit, Attorney Murray attests that the hourly rate is lower or comparable to rates typically charged by attorneys with Attorney Samarel's level of experience. The nature of the work was legal research on relatively complex post trial issues given the jury's answers in the verdict form. The rate also falls within a range supported by case law. *See Ferraro v. Kelley,* 2011 WL 576074, at *6 (awarding $200.00 hourly rate for associate three years out of law school when she performed work in 2008 and had limited involvement).

Turning to Maher, Attorney Murray likewise avers that her hourly rate corresponds to comparable rates typically charged, albeit by attorneys.[135] Plaintiff seeks an hourly rate of $100.00 for her services. Her credentials are not in the record. The 3.30 hours of work she performed entailed reviewing case citations and printing cases. The nature of such work corresponds with work customarily performed by paralegals. *See Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (providing examples of paralegal work including "checking legal citations"). The hourly rate also falls within the range of rates charged in Boston for paralegals or support staff performing such work. *Ferraro v. Kelley,* 2011 WL 576074, at *6 (approving $90.00 rate for paralegal); *Hudson v. Dennehy,* 568 F.Supp.2d 125, 133 (D.Mass. 2008) (approving $100.00 rate for parale-

gal). The requested rate is therefore appropriate.

Applying these hourly rates to the core and non-core hours expended by each individual yields the following calculation: (1) Attorney Murray in 2007 ($592.50); 2008 ($3,166.25 as core and $1,987.50 as non-core); 2009 ($21,119.25 as core and $22,638.00 as non-core); 2010 ($7,422.80 as core and $8,123.70 as non-core); 2011 ($27,405.00 as core and $3,720.00 as non-core); and 2012 ($2,160.00 as core and $80.00 as non-core); (2) Attorney Murillo in 2011 ($23,206.05 as core and $4,022.70 as non-core) and 2012 ($5,817.50 as core and $192.50 as non-core); (3) Attorney Samarel in 2011 ($630.00); and (4) Maher in 2011 ($330.00).

### III. *Lodestar Adjustment*

Once calculated, the "court has the discretion to adjust the lodestar itself upwards or downwards based on several different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter." *De Jesus Nazario v. Morris Rodriguez,* 554 F.3d at 207. The Supreme Court identifies the "results obtained as a preeminent consideration in the fee-adjustment process." *Coutin v. Young & Rubicam Puerto Rico, Inc.,* 124 F.3d 331, 338 (1st Cir.1997) (citing *Hensley,* 461 U.S. at 432, 103 S.Ct. 1933). The results obtained takes into account a combination of the plaintiff's "claim-by-claim success, the relief obtained, and the societal importance of the right vindicated." *Burke v. McDonald,* 572 F.3d at 65 n. 11; *accord De Jesus Nazario v. Morris Rodriguez,* 554 F.3d at 206 n. 13 (results obtained encompasses combination of these three considerations).

---

**135.** Officer Cofield does not submit any argument, let alone evidence, challenging Maher's

rate. *See Hutchinson ex rel. Julien v. Patrick,* 636 F.3d at 16–17 (discussing waiver).

Officer Cofield seeks a 25% reduction in the lodestar based upon plaintiff's limited success on a claim by claim basis. (Docket Entry # 75, § III(i)). Having already excluded fees for hours worked on the unsuccessful claims against the City (counts I and VIII) not interrelated with the successful section 1983 false arrest claim, any adjustment turns upon examining the remaining, interrelated successful and unsuccessful claims. Plaintiff voluntarily dismissed a number of these interrelated claims, including the negligence claim against the City and the malicious prosecution claim, shortly before trial. He proceeded to trial on the aforementioned six related claims arising from the same common core of facts. He prevailed on half of these claims. Consequently, plaintiff was not successful on all or substantially all of his interrelated claims. The successful claims however comprised significantly more than an insubstantial subset of the successful claims. *See Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d at 339 ("[i]f a plaintiff prevails on an insubstantial subset of her interrelated claims and obtains only limited relief," court may reduce award).

Plaintiff also recovered substantial relief in the form of a damages award in the amount of $101,188.30. Although he did not recover punitive damages, he succeeded in deflecting Officer Cofield's vigorous post trial attack on the recovery. The societal importance of the right vindicated also weighs in favor of upholding the lodestar as calculated. All in all, a global reduction is not warranted.

In sum, having considered all of Officer Cofield's arguments, including his proportionality argument and the case he submits in a supplemental opposition (Docket Entry # 76), attorney's fees in the amount of $132,613.75 are fair and reasonable.

IV. *Expenses*

In the initial fee application, plaintiff seeks expenses in the amount of $6,128.51. The supplemental request adds $329.74 for computerized legal research on Lexus and Westlaw and for stenographic services. Officer Cofield objects to the lack of adequate detail in the entries. He identifies the November 22, 2010 entry as an example of an entry that makes it "impossible" to dispute the reasonableness of the request. (Docket Entry # 75).

It is well settled that "reasonable expenses, necessary for the prosecution of a case, are ancillary to and may be incorporated as part of a fee award under a prototypical federal fee-shifting statute." *Hutchinson ex rel. Julien v. Patrick,* 636 F.3d at 17. Moreover, "remediation is not limited to items recoverable as court costs" under 28 U.S.C. § 1920. *Id.* Rather, "recovery can extend to a broad range of other items, including travel expenses, computer time, and the like." *Id.* (holding that "reasonable costs and expenses for travel, printing, and photocopying can be recovered in a fee-shifting proceeding without regard" to limitations "in 28 U.S.C. § 1920"); *see Quint v. A.E. Staley Manufacturing Co.,* 245 F.Supp.2d 162, 179 (D.Me.2003) ("[c]osts incurred for transportation, lodging, parking, food and telephone are both reasonable and necessary"). An award of reasonable expert fees may also be appropriate. *See, e.g., Norkunas v. First Shrewsbury Hotel Investments, LLC,* 2011 WL 810203, at *2 (D.Mass. Mar. 9, 2011) (balance of "requested expenses, including expert fees, is reasonably well documented and will be allowed").

In the case at bar, plaintiff seeks reimbursement for permissible expenses such as photocopying charges, telephone fees, trial subpoenas, travel expenses and court filing costs. Officer Cofield does not ob-

ject to or contest an item on the basis that it is not compensable. For example, he does not contest an award for the expense of a non-testifying expert as long as it is properly documented. *See generally Interfaith Cmty. Org. v. Honeywell International, Inc.*, 426 F.3d 694, 701, 716 n. 19 (3rd Cir.2005). The expenses submitted are therefore proper and this court turns to the amount and the detail provided.

It is also well settled that, in order to recover the above costs, they must be adequately documented. *See Norkunas v. First Shrewsbury Hotel Investments, LLC*, 2011 WL 810203, at *2 (because "expense request is completely undocumented (there are no supporting receipts), the request for $1,000.00 in generic travel expenses is disallowed"); *Parker v. Town of Swansea*, 310 F.Supp.2d 376, 400 (D.Mass. 2004) (reducing expenses by 50% due to absence of subject matter description for "'research' charges" and because "most of Parker's claims were unsuccessful"); *Iverson v. Sports Depot, Inc.*, 2002 WL 745824, *3 (D.Mass. Feb. 20, 2002) (denying costs "for 'litigation expenses and miscellaneous'" because they were "wholly unexplained"). The single identified example Officer Cofield contests is for "Consultant—Peter Buckley, MD; Request#: 182760." (Docket Entry # 58–2). The November 22, 2010 consultation with Dr. Buckley took place shortly before the final deadline for plaintiff's expert disclosure. Medical records show that plaintiff's physical injuries and pre-existing injuries concerned his back and knee. Given the circumstances of this case, the entry therefore provides sufficient detail to assess the reasonableness of the expense.

■ Examining each of the other listed expenses, the photocopy and stenographic overtime charges incurred during trial do not need to specify the subject matter. The August 2009 expenses during the time

of Mercado's deposition provide sufficient detail under the circumstances. The only entry that lacks adequate detail is the May 20, 2009 entry for $1,120.80 described as "Attorney expense reimbursement—Lawrence Murray; INVOICE#: 081409." It is therefore not reimbursable. The expenses therefore total $5,337.45.

### CONCLUSION

In accordance with the foregoing discussion, the fee applications (Docket Entry ## 56, 78 & 83) are **ALLOWED** in part and **DENIED** in part. Plaintiff is entitled to an award of $132,613.75 in attorney's fees and $5,337.45 in expenses.